No. 83-31

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

PETER A. MORRISON, et al.,

        Plaintiffs,

  -vs-

EDWIN P. HIGBEE, et al.,

        Defendants.

------------------------------------------

JAMES E. ROBERTSON,

        Plaintiff and Appellant,

  -vs-

LEWIS HUGHES and MILDRED HUGHES, et al.,

        Defendants and Respondents.

---

Appeal from:  District Court of the Fifth Judicial District,
              In and for the County of Madison,
              The Honorable Joseph Gary, Judge presising.

Counsel of Record:

    For Appellant:

        Moore, Rice, O'Connell & Refling, David C. Moon,
        Bozeman, Montana

    For Respondents:

        Morrow, Sedivy & Olson; J. H. Morrow, Bozeman,
        Montana

---

Submitted on Briefs:  March 31, 1983

Decided:  June 30, 1983

Filed: JUN 30 1983

*Ethel M. Harrison*

---
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Robertson brought an action in the District Court of the Fifth Judicial District, Madison County, to obtain an injunction against the defendants Hughes to prevent them from further utilizing a portion of Robertson's irrigation ditch to convey water. The Hughes counterclaimed for damages, both actual and punitive, alleging that Robertson negligently maintained the ditch, which caused erosion, and maliciously refused to take corrective action to prevent the erosion. The case was to be tried by jury, but at the close of the evidence, the District Court directed verdicts in favor of the Hughes regarding the injunction and Robertson regarding the counterclaim. Both parties appeal.

Since approximately 1949, Lewis Hughes and Robertson have been ranching in Madison County. In 1953, Robertson and his wife gave the Hughes oral permission to use the ditch in controversy (the Robertson ditch) to irrigate their ranch. Prior to that time, however, the Hughes' predecessors also used the ditch for irrigation purposes. The length of time during which the Hughes' predecessors used the ditch was not conclusively disclosed at trial.

On October 8, 1959, the Robertsons sent a letter to the Hughes revoking their permission to use the ditch. Shortly thereafter, Lewis Hughes asked the Robertsons if he could continue to use the ditch for irrigation purposes. An agreement was then drafted by the Robertsons' attorney, which granted to the Hughes a license to use the ditch. The agreement also provided that the license was subject to ter- mination at any time by the Robertsons and that the Hughes pay for one-half of the maintenance costs of the ditch.

Lewis Hughes signed the agreement in the Robertsons' attorney's office and then took the agreement home for his wife to sign. Lewis Hughes testified that he did not carefully read the agreement and did not understand it. He also testified that the Robertsons' attorney told him the agreement was drafted to give him a right in the Robertson ditch forever. Mildred Hughes testified that when she signed the agreement, she was relying upon what her husband told her the agreement said. She also testified that she did not read the agreement very carefully. The agreement was in the Hughes' possession for at least two days before it was returned to the attorney's office.

Both Robertson and the Hughes continued to use the ditch for irrigation purposes from 1959 to 1980. During that time, the Hughes and Robertson or his lessees maintained the ditch by annually removing brush which impeded the flow of water through the ditch. At various times, Robertson's lessees also helped the Hughes maintain the ditch by removing the trees and building up the ditch banks. During that period, however, the Hughes were required to move a fence located on the south side of the Robertson ditch because of washing and erosion which the Hughes allege occurred in the ditch. Lewis Hughes also testified that Robertson allowed a headgate on the ditch to wash out, which ruined eight acres of his land. On cross-examination, however, Hughes admitted that the wash-out occurred before Robertson had acquired an interest in the ditch.

On March 14, 1980, Robertson's attorney sent a letter to the Hughes revoking the license. The Hughes, however, continued to use the ditch for irrigation purposes. Robert-

-3-

son then filed a complaint seeking to enjoin the Hughes from using the ditch. The Hughes brought a counterclaim alleging that Robertson's negligent maintenance of the ditch caused erosion which damaged their property. The Hughes also asked for punitive damages because of Robertson's alleged oppressive and malicious refusal to do anything to prevent the erosion.

At trial, the Hughes presented evidence to show that erosion had occurred in the Robertson ditch and that the erosion damaged their property. The Hughes did not present testimony, however, to prove when the erosion occurred. Louie Day (Hughes' expert witness) testified that he did not know when the erosion occurred, but that it could have happened fifty or one hundred years ago. He also testified that the erosion has continued since the ditch was first put in.

At the close of the evidence, both Robertson and the Hughes moved for directed verdicts, and the District Court granted both motions. Robertson now appeals from the portion of the verdict wherein the Hughes were adjudged to have a prescriptive easement in the Robertson ditch. The Hughes also appeal, arguing that the issue of whether Robertson negligently maintained the ditch should have been presented to the jury.

Basically, two issues are presented for our review:

I. Did the District Court err in directing a verdict for the Hughes by finding that the October 19, 1959, agreement did not divest the Hughes of any ditch rights?

II. Did the District Court err in directing a verdict for Robertson by finding that the Hughes failed to prove that Robertson's action caused the Hughes' damages, which

removed that issue from the jury's consideration?

I. DIRECTED VERDICT FOR THE HUGHES

Pursuant to the direction of the District Court judge, the jury found as follows:

> "On the plaintiff Robertson's claim against the defendants Hughes for an injunction against the defendants Hughes' continued use of the 'Robertson' canal or ditch, find that the defendants Hughes have a prescriptive right by use of uninterrupted, continuous use of this ditch for a period of time in excess of ten years prior to October 19, 1959, adverse to the plaintiff Robertson and his predecessors in interest, and by reason thereof the agreement of October 19, 1959 being without consideration, did not divest the defendants Hughes of any rights in the ditch and did not create a mere license in the use of said ditch and by reason thereof the plaintiff Robertson is not entitled to a judgment for an injunction prohibiting the defendants Hughes from using said ditch."

Robertson presents many arguments for his contention that the District Court erred by refusing to grant the injunction, but the argument we find most compelling is that no prescriptive easement existed. In Montana, a party claiming to have acquired an easement by prescription must show open, notorious, exclusive, adverse, continuous, and uninterrupted use of the easement claimed for the full statutory period. Madison County v. Elford (1983), _____ Mont. _____, 661 P.2d 1266, 40 St.Rep. 457. If the use begins as a permissive use, it cannot ripen into a prescriptive right, no matter how long it may continue, unless there is a distinct and positive assertion of a right hostile to the owner. Drew v. Burggraf (1963), 141 Mont. 405, 387 P.2d 232.

In this case, the Hughes' own actions indicate that

their use of the ditch was permissive rather than hostile. For example, in 1953, Lewis Hughes asked the permission of the Robertsons to use the ditch to irrigate his ranch. In 1959 when the Robertsons revoked their permission, the Hughes signed a license agreement which stated that the Robertsons could revoke their permission at any time. The Hughes argue that because they did not read the agreement carefully and did not understand it, they should not be held accountable to the terms of the agreement. However, "a party to a contract cannot avoid the contract on the ground that he made a mistake where there has been no misrepresentation, no ambiguity in the terms of the contract and the other party has no notice of such mistake and acts in good faith." Silva v. McGuinness (1980), ____ Mont. ____, 615 P.2d 879, 37 St.Rep. 1401.

The Hughes also argue that they had a prescriptive easement in the ditch prior to signing the license agreement because of their predecessors' use of the ditch. The only testimony regarding the use of the ditch by the Hughes' predecessors came from Lewis Hughes who stated that the ditch had been used for fifty years and that the "old timers" put their water together into one ditch in times of drought so that the water would reach the end of the ditch where the ranches were located. This testimony does not indicate hostile use, but on the contrary indicates friendly cooperation between neighbors. Even if Lewis Hughes' testimony could be construed to indicate that his predecessors obtained a prescriptive easement, Hughes' subsequent actions of asking permission to use the ditch and of signing the license agreement are incompatible with the nature of a

prescriptive easement. As stated in section 70-17-111(3), MCA: "A servitude is extinguished by the performance of any act upon either tenement by the owner of the servitude or with his assent which is incompatible with its nature or exercise."

The actions of the Hughes demonstrate that they did not obtain an interest in the ditch by prescription, but merely acquired a license to use the ditch. The term "license" has been defined as the permission or authority to do a particular act or series of acts upon the land of another without possessing an interest therein. Renfro et al. v. Dettwiler (1933), 95 Mont. 391, 26 P.2d 992. Because no possessory interest exists in the licensee, the license may be revoked at will. "The licensee is conclusively presumed, as a matter of law, to know that the license is revocable at the pleasure of the licensor, and if he expends money in connection with his entry upon the land of the latter he does so at his peril. Any other doctrine would render most licenses irrevocable and make them operate as conveyances of interests in land." Renfro, 93 Mont. at 398, 26 P.2d at 994.

We reverse the District Court's finding that a prescriptive easement existed in the Hughes and order the District Court to issue an injunction preventing further use by the Hughes of the Robertson ditch.


II. DIRECTED VERDICT FOR ROBERTSON

Pursuant to the direction of the District Court judge, the jury found as follows:

> "On the counterclaim of the defendants Hughes against the plaintiff Robertson,

we find that there was a failure of proof to show that any action of the plaintiff Robertson caused damages to the defendants Hughes inasmuch as the 'Robertson' ditch in question had been located and established at least 20 years prior to the acquiring of interest in the lands in question by either the plaintiff or the defendants, and that there is no evidence that any action of the plaintiff caused the erosion originally and that the subsequent, gradual erosion is no different than that of any other irrigation ditch in existence and is not proximately caused by any action or inaction of the plaintiff Robertson, and by reason thereof, the defendants are not entitled to any claim of damages against the plaintiff Robertson."

The rule for determining whether a directed verdict should be granted in negligence actions has been stated in Lawlor v. County of Flathead (1978), 177 Mont. 508, 582 P.2d 751, as follows:

". . . as a general rule, the issues of negligence and contributory negligence must be decided by the jury under appropriate instructions . . . and the settled rule is that a case should not be taken from the jury unless it follows as a matter of law that plaintiff cannot recover upon any view of the evidence, including the legitimate inferences to be drawn from it; every fact will be deemed proved which the evidence tends to prove." Quoted from Autio v. Miller (1932), 92 Mont. 150, 167, 11 P.2d 1039, 1044.

The Hughes contend that this rule should have precluded the District Court from issuing a directed verdict because inferences could have been drawn from the evidence to show that Robertson was negligent in maintaining the ditch and that his negligence caused the erosion. We disagree.

In this case, no evidence was presented to prove that Robertson breached any duty which caused the damages complained of by the Hughes. "[A] breach of duty relied upon must have been the proximate cause of the injury, and the

facts pleaded must disclose the causal connection between the defendant's negligent act and the injury complained of." Fusselman v. Yellowstone Valley etc. Co. (1917), 53 Mont. 254, 163 P. 473. The most which can be deduced from the evidence is that any damages which did in fact occur to the Hughes' property occurred before Robertson acquired his interest in the ditch. For example, Louie Day testified that the erosion had continued since the ditch was originally put in. (The evidence revealed that the ditch was "put in" long before the Hughes and Robertson owned their ranches.) Even Lewis Hughes admitted that Mrs. Robertson, who was Robertson's predecessor, was responsible for any damages caused by the ditch. Clearly, such evidence is insufficient to support an award of damages.

The present case differs from the recent case of Marta v. Smith (1981), ____ Mont. ____, 622 P.2d 1011, 38 St.Rep. 28, wherein this Court upheld a District Court's judgment which awarded damages for erosion caused by the negligent acts of the defendant. In Marta, this Court quoted partially from Calvert v. Anderson (1925), 73 Mont. 551, 236 P. 847, which we now quote in toto as follows: "It is the rule in this state that the owner of an irrigating ditch is not an insurer thereof, and is liable only for damages caused by his willful acts, or by his negligence in constructing, maintaining, or using his ditch." The facts in this case, unlike those in Marta, do not show that Robertson willfully or negligently constructed, maintained, or used the ditch. We therefore hold that the District Court was correct in directing a verdict which found that the Hughes were not entitled to damages.

Reversed in part and affirmed in part. No costs to either party.

_____
John C. Sheehy
Justice

We concur:

_____
John Conway Harrison

_____
Daniel J. Shea

_____
Frank B. Morrison

_____
Justices