No. 84-567

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

-------------------------------------------

CHARLOTTE BOLLES KUHLMAN,

              Plaintiff and Appellant,

    -vs-

TEKSU RIVERA and SILKITWA
RIVERA, husband and wife,

              Defendants and Respondents.

-------------------------------------------

APPEAL FROM: District Court of the Nineteenth Judicial District,
            In and for the County of Lincoln,
            The Honorable Robert M. Holter, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        L. Charles Evans, Libby, Montana

    For Respondent:

        Keller & German; Ann C. German, Libby, Montana

                                                  

Submitted on Briefs: April 11, 1985

Decided: June 13, 1985

Filed: JUN 13 1985

*Ethel M. Harrison*

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is an appeal from a judgment of the Nineteenth Judicial District, Lincoln County. Charlotte Bolles Kuhlman brought a quiet title action against Teksu and Silkitwa Rivera. The Riveras counterclaimed for a determination of their water rights and a road easement. The District Court concluded that the Riveras had an easement for water from a spring on Kuhlman's land and that they had a right of way across Kuhlman's land as long as they reside on their property. The Court awarded the Riveras $500 damages for interference with their rights. Kuhlman appealed. The judgment of the District Court is affirmed.

Kuhlman raises eight issues:

1. Did Kuhlman grant the Riveras a revocable license to take water from her spring?

2. Was the right of way a revocable license?

3. Did Kuhlman make a valid oral contract to sell water from her spring to the Riveras?

4. Was Frank Bolles, Kuhlman's son, her authorized agent?

5. Was the water well agreement fraudulently induced and lacking mutual understanding?

6. Was the District Court's finding that Kuhlman was present during the installation of the water line incorrect?

7. Was the District Court's finding that Kuhlman disconnected the Riveras' water line causing damages in the amount of $500 incorrect?

8. Was the District Court's finding that the Riveras' expenditures to install the water line increased the value of Kuhlman's property incorrect?

No issue has merit. As discussed below, this controversy centers on whether the Riveras fraudulently induced Kuhlman to make agreements concerning water and a right of way. The District Court found that the parties made valid agreements and did not find fraud. These findings are supported by competent, substantial evidence and will not be disturbed on appeal.

In 1982 the Riveras moved onto land in Lincoln County near Kuhlman's property. No water was available on their land so, when they first moved on the land, they hauled water from Eureka. In June 1982 they became friendly with Kuhlman's son, Frank Bolles, and began hauling water from the spring on his mother's property. During the summer the Riveras and Bolles orally agreed that the Riveras could install a waterline from the Kuhlman spring to the Riveras' property. The Riveras had originally planned to drill a water well on their land but decided the waterline was a more feasible and easier solution to their water problem.

At the time, the Riveras believed Frank Bolles and his mother owned the land. Frank Bolles's name, which appeared on the land records, is the same as his father's. The Riveras paid Frank Bolles $10 per month for the water. They did not talk to the mother about using the water before they began work on the waterline but she was present as the work was performed and appeared agreeable to it. Constructing the waterline involved backhoeing 1,550 feet of waterline from Kuhlman's property to Riveras' property and crossing 150 feet of Forest Service land with the Forest Service's consent. It

also involved constructing a shelter with a pump at the spring. At the trial the Riveras introduced evidence that they spent $3,271 on water and road expenses.

Kuhlman gave the Riveras a right of way across her property for the time they reside at their present location. She executed a written document to that effect signed and dated June 23, 1982.

Their surveyor told the Riveras that they needed a written agreement about the water. The Riveras and Kuhlman and Bolles signed an agreement which Riveras sent to the State Department of Health and Environmental Sciences and then recorded. At the trial it was this document the Riveras introduced to substantiate their claim that Kuhlman gave them an easement.

The parties now disagree about the terms of the agreement granting Riveras the use of the water. Kuhlman asserts that in late June 1982 she agreed to the Riveras using the water if they signed a written agreement and paid her $1,500. The Riveras assert that they were given the easement and there was no demand for a written agreement or $1,500 until November 1983 and, when they refused to sign and pay $1,500, this suit was commenced. In the spring of 1984 Kuhlman shut off the power to the pump and blocked the roadway.

To substantiate their assertion, the Riveras introduced the document entitled, "Water Well Agreement" signed by all the parties, notarized on June 18, 1983, and recorded in the Lincoln County records at the request of Teksu Rivera on December 6, 1983. This document also bears a notation "Received July 11, 1983 by the Montana Department of Health and Environmental Sciences." The first page described the

Riveras' property, entitled them to domestic water service from Kuhlman's spring, entitled each party to a half interest in the spring and to share the costs equally, reserved for Bolles the right to add one other domestic water user, and granted easements for the construction and maintenance of the system. Kuhlman contends that this was not the first page of the document she signed and that the Riveras fraudulently substituted this page.

Issue No. 1. Did Kuhlman grant Riveras a revocable license to take her spring water?

Kuhlman's legal argument on this issue is so unclear that it is paraphrased here with reluctance. On appeal, Kuhlman claims she gave the Riveras a license to use the water which she later revoked and the District Court erred in not so finding and concluding. In the District Court she sought to quiet title to her property by removing a recorded "Water Well Agreement" that she contended clouded her title. In her complaint she alleged fraud and she stated:

> "14. Plaintiff has at no time transferred to Defendants the right to use all of or any portion of the water from the spring . . ."

A license is the permission or authority to do a particular act or series of acts upon the land of another without possessing an interest therein. Morrison v. Higbee (1983), 40 Mont. 1041, 1044, 1045, 668 P.2d 1025, 1028, citing Rentfro et al. v. Dettwiler (1933), 95 Mont. 391, 26 P.2d 992. The use of a license is revocable at the will of the servient tenant.

Kuhlman sued claiming fraud and lost. Her complaint says nothing about a license and, in fact, paragraph 14 makes it clear no license was granted. Kuhlman could not have granted the Riveras permission to use the water and "at no

time transferred to Defendants the right to use all of or any portion of the water." The District Court did not err by not finding a revocable license.

Issue No. 2. Was the the right of way across Kuhlman's land a revocable license?

Kuhlman's position on this issue is also unclear. The District Court concluded that the Riveras have an easement across a roadway for as long as they reside on the property and, because of fire, gave them three years to rebuild during which time they would be considered to reside on the property. This conclusion is based on a handwritten document by Kuhlman which states:

> "I Charlotte Bolles Kuhlman give right of way across my property located at NE¼ NE¼ section 22, Township 36 N, Range 28 W across Pinkham Road from my existing house to Teksu and Sil-Kit WA Rivera. For which time they reside on their present location.

> June 23, 1982

> (signed)  Charlotte Bolles Kuhlman"

On appeal, Kuhlman argues that because there was no contract there can be no easement. In her brief she cites Louis v. Patton (1911), 42 Mont. 528, 113 P. 745, for the rule that "without a contract there could be no easement." The argument that an easement requires a contract is not supported by Montana case law, including Louis v. Patton, or our statutes.

An easement is a non-possessory interest in land, "a right which one person has to use the land of another for a specific purpose or a servitude imposed as a burden upon land." Laden et al. v. Atkeson (1941), 112 Mont. 302, 116 P.2d 881, 883. It is distinguished from a license because a license is not an interest; a license is merely a privilege

to do some act on the land without possessing an interest in the land. Kuhlman's written grant was of an easement and not a license because Kuhlman did not reserve to herself the right to terminate the grant while Riveras resided on the property.

Issue No. 3. Did Kuhlman make a valid oral contract to sell water from her spring to the Riveras?

We agree with Kuhlman's contention that she did not enter into a valid contract for the sale of water rights to the Riveras' but that does not effect the outcome of this case. The District Court did not find there was a contract, the court never used the term "contract" and did not rely on a contract to find an easement. In fact, that is exactly what the respondents successfully argued below.

There is substantial credible evidence that Kuhlman gave, not sold, Riveras the right to use the water. The court's judgment decrees that the Riveras hold an easement to use the water. An easement can be created by grant, reservation, exception or covenant, by implication or by prescription. Prentice v. McKay (1909), 38 Mont. 114, 98 P. 1081. This case is a question of an easement by grant created with a writing. To be a valid conveyance, it must satisfy the formal requirements of a grant. The written water well agreement identified the grantor, Kuhlman, and the grantee, Riveras, adequately described what was conveyed, had language of conveyance and was signed. These satisfy the requirements of § 70-20-103, MCA. As discussed below, we agree with the District Court that this conveyed an easement to the Riveras and was not fraudulently induced. While Kuhlman could have entered into a contract to sell the easement, the record establishes she gave it away.

- 7 -

Issue No. 4. Was Frank Bolles an agent of Charlotte Kuhlman?

Kuhlman contends that her son was not her actual or ostensible agent, but this issue is irrelevant to this appeal. For Riveras to prevail it was not necessary to establish that an agency relationship existed between Kuhlman and Bolles because Kuhlman herself granted the right of way and the right to use the spring water when she signed the written documents. Although there is some controversy about when she became aware of the arrangement the record is clear that she eventually participated in the agreement.

Whether Bolles was Kuhlman's agent does not affect the judgment of this case. The function of this Court upon appeal is to review the judgment. Rule 2, M.R.App.Civ.P. This issue does not relate to the merit of this case and does not affect the judgment; therefore this Court does not reach the issue.

Issue No. 5. Was the water well agreement fraudulently induced?

Kuhlman contends that the water well agreement is not the same document she signed before a notary on June 11, 1983. She contends that the Riveras substituted the first page of the two-page document. The Riveras contend the agreement is the document signed without any alterations. Both parties introduced evidence to support their contentions. The judge did not find fraud and concluded the water well agreement created an easement.

In a non-jury trial witness credibility and the weight of the testimony are matters for the District Court. Findings of fact will not be set aside unless clearly erroneous. Rule 52(a), M.R.Civ.P. If findings are supported

by competent, substantial, although conflicting evidence, they will not be disturbed on appeal. Holloway v. University of Montana (1978), 178 Mont. 190, 582 P.2d 1265. Here, Kuhlman and her son testified that the pages they signed did not resemble the document filed. However, they each described a different document. The Riveras testified the document before the court was the document signed. Their surveyor testified that the document filed was the form he had supplied. The District Court found no fraud and this is supported by evidence and is not clearly erroneous.

Issue No. 6. Did the District Court err in finding that Kuhlman was present when the Riveras' constructed the waterline?

There is conflicting testimony on this issue. Although this finding is not relevant to the outcome of the case it is supported by evidence and not clearly erroneous.

Issue No. 7. Did the District Court err in finding that Kuhlman disconnected the waterline, forcing the Riveras to move from their property and causing $500 damages?

The District Court erred in two of these findings. The Riveras moved from their property because of fire and Kuhlman did not disconnect the water line. She switched off the power. However, switching off the power caused the damage the District Court ordered Kuhlman to reimburse. The Riveras planted seeds and plants on their land which died because they were not watered. The loss occurred because Kuhlman switched off the power to the pump.

Issue No. 8. Did the District Court err in finding the Riveras' expenditures in installing the waterline increased the value of Kuhlman's property?

This finding, while not crucial to the judgment, is supported by substantial credible evidence. The Riveras testified, and Kuhlman agreed, that they built a pump house, laid a concrete pad and installed a pump. These improvements increased the value of the land.

The judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
_____
_____
_____
Justices