No. 88-319

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

WILLIAM GEORGE DOWNING and
MARQUERITE M. DOWNING,

        Plaintiffs and Respondents,
        and Cross-Appellants,

   -vs-

C. JOSEPH GROVER, GEORGE J. GROVER,
and HAZEL M. GROVER,

        Defendants and Appellants.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Garlington, Lohn & Robinson; Larry E. Riley, Missoula,
        Montana

    For Respondent:

        Recht & Greef; John D. Greef, Hamilton, Montana

Submitted on Briefs: April 3, 1989

Decided: April 26, 1989

Filed:

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Plaintiffs (Downings) brought suit in the Fourth Judicial District, Ravalli County, seeking to establish a public road across defendants' (Grovers) property allowing easy access to Downings' property, or, in the alternative, a public or private prescriptive easement. The District Court, sitting without a jury, found that no public road existed, no public easement existed, but that a prescriptive easement had been established by Downings' predecessors in interest prior to 1961. Both parties appeal the District Court judgment. The Downings still maintain that one or all of the roads in question are public roads or that the public has established prescriptive easements by adverse use. The Grovers argue that the record does not support a finding of any easement, public or private, across their property.

Thus, the issues on appeal are whether the District Court erred when it found that no public roads existed and when it concluded instead that a private easement had been established. We affirm in part and reverse in part.

The land in question is just west of Hamilton, Montana, generally described as T5N R21W Lots 3, 4 and 9. The Grovers obtained their 800-acre tract of land in 1961. At that time, they put a gate across the road entering their property. They locked the gate, although they allowed access to those who asked. Next to the gate they erected a large wooden sign which read, "PRIVATE PROPERTY, NO TRESPASSING, PRIVATE ROAD." They did not hear any protest on this conduct for twenty-six years until they were contacted in 1987 by the Downings regarding the possible existence of an easement. It is not disputed that access has been permissive since 1961; thus any easement must be established by Downings' predecessors in interest prior to 1961.

2

The Downings obtained their 40-acre tract of land in 1965. The land is undeveloped and does not have any habited buildings on the premises. The Downings bought this property for $2,000 from Trudy Schatzer in 1965. They now wish to sell it for $90,000 conditioned on obtaining access.

The road which enters Grovers' property is a dirt road which, right after crossing the Grovers' property line, splits into two separate roads. One branch goes to the southside of Sawtooth Creek and the other crosses Sawtooth Creek on a one-lane wooden bridge and proceeds on the northside of Sawtooth Creek up to the Grovers' house. Beyond the house, the road is presently indiscernible, although the trial testimony established that previously it had been traveled (prior to 1961) to proceed in a southwesterly direction to or near the old Welch cabin site, (long since burned down) which is now Downings' property. To add to the confusion of establishing this road, directly to the north is another road now called Owings Lane Road. The testimony by all at trial generally conceded that all three of these roads are commonly referred to as Sawtooth Road or Sawtooth Creek Road.

Because of this great confusion, the District Court declined to find that a public road existed. The District Court is affirmed on that finding. Any finding of a public road based on this record would have been pure speculation. The documents from Ravalli County introduced in support of finding a public road were so ambiguous that they could have referred to any of these three roads, or all of them, because all roads bore the same name and roughly the same description. Likewise, the testimony of the residents was that all three roads had the same name. Such evidence is not sufficient to put a property owner on notice that his rights may be jeopardized unless he acts. As we stated in Parker v.

3

Elder (Mont. 1988), 758 P.2d 292, 45 St.Rep. 1305, absent use by the public over "the exact route claimed" for ten years, there is no public roadway.

For the same reason, the court declined to find that the public had established a prescriptive easement. The testimony of those who traveled the Sawtooth road revealed that they did not know which of the three roads was actually "Sawtooth Road." Many of them traveled just the north branch but not the south branch. Many did not travel as far as the old Welch cabin site. Based on this record, the District Court is likewise affirmed in its denial of a public easement.

The court in Finding XXVI found that there was "credible evidence of open, notorious, exclusive, adverse, continuous and uninterrupted use of the northside branch of the road for fifty years prior to 1961." From that finding, it concluded that a private easement by prescription had been established. That finding is not supported by the record and is reversed.

## I. Prescriptive Easements in Montana

### A. ELEMENTS

The burden at trial on the party seeking to establish the prescriptive easement is to show

1) open
2) notorious
3) exclusive
4) adverse
5) continuous, and
6) uninterrupted use

of the easement claimed for the full statutory period. Clemens v. Martin (Mont. 1986), 719 P.2d 787, 43 St.Rep. 994. The statutory period is five years. Section 70-19-401, MCA.

4

All elements of prescriptive easement must be proved by a preponderance of the evidence or the claim will fail. Grimsley v. Estate of Spencer (1983), 206 Mont. 184, 670 P.2d 85. All elements must be proved in a case such as this because "one who has legal title should not be forced to give up what is rightfully his without the opportunity to know that his title is in jeopardy and that he can fight for it." Grimsley, 670 P.2d at 92-93.

"Open and notorious" is defined as "a distinct and positive assertion of a right hostile to the rights of the owner and must be brought to the attention of the owner." Poepping v. Neil (1972), 159 Mont. 488, 499 P.2d 319, 321. "Continuous" means "it is necessary to have use made often enough to constitute notice of the claim to the potential servient owner." Powell & Rohan, Powell on Real Property, Vol. 3, § 413, pp. 34/124-34/126 (1987). "Uninterrupted" means "use not interrupted by the act of the owner of the land or by voluntary abandonment by the party claiming the right." Scott v. Weinheimer (1962), 140 Mont. 554, 374 P.2d 91.

The plaintiff offered evidence regarding the use of the northside road from roughly 1918 through 1961. However, this Court concludes that it is unnecessary to discuss the elements and possible establishment of a private prescriptive easement. The record is replete with examples of Downings' conduct and the conduct of Schatzer, his immediate predecessor in interest, which is wholly inconsistent with the existence of a private easement.

B. INCONSISTENT ACTS

Section 70-17-111, MCA, provides:

> . . . (3) A servitude is extinguished:
> by the performance of any act upon

5

> either tenement by the owner of the servitude or with his assent which is incompatible with its nature or exercise.

That statute was construed in Morrison v. Higbee (1983), 204 Mont. 515, 668 P.2d 1025, where this Court stated, "even if Lewis Hughes' testimony could be construed to indicate that his predecessors obtained a prescriptive easement, Hughes' subsequent actions of asking permission to use the ditch and of signing the license agreement are incompatible with the nature of a prescriptive easement." This Court went on to reverse the District Court finding in that case that a prescriptive easement existed.

In the instant case, Schatzer acted inconsistently by establishing permissive use after Grover locked the gate. Plaintiff Downing acted inconsistently in at least three ways: (1) by telling others that he had no easement, (2) by continuing the permissive use established by Schatzer, and (3) and by withdrawing the claim at the close of the trial.

In his deposition plaintiff W. Downing stated that he has admitted to others that he has no easement. When he retreated from that position at trial, he was impeached by attorney Riley:

> Q. Okay. So the fact of the matter is that you told people you didn't have an easement.
>
> A. Yes.
>
> Q. So from the time you purchased the property in 1965 until 1986 when you had a chance to sell it to Mr. Montgomery, no attorneys had told you you had an easement, the person you bought the property from didn't tell you you had an easement, and you were telling people you didn't have an easement, right?

6

A. Yes.

Downing further testified that he sought Grover's permission to use the road, as Schatzer had done. Grover granted permission to use the road as far as the Grover house, but not beyond. Downing never used the road until 1987 when he drove up there in connection with this lawsuit.

In plaintiffs' proposed findings of fact and conclusions of law dated November 3, 1987 (pretrial), they claimed a private easement by prescription.

After the trial, both parties submitted revised findings and briefs in support thereof. In their December 4, 1987 (post-trial) revised findings, plaintiffs dropped their claim of private prescriptive easement stating "insufficient evidence" as the reason. The brief in support of Downings' findings, also dated December 4, 1987, admitted their position on private easement stating:

> 4. HAVE THE PLAINTIFFS OR THEIR PREDE-
> CESSORS IN INTEREST ESTABLISHED AN
> EASEMENT BY PRESCRIPTION FOR THE USE AND
> BENEFIT OF PLAINTIFFS' PROPERTY?
>
> There was insufficient evidence that the
> plaintiffs established a private ease-
> ment by precription [sic].

Assuming, arguendo, that a private easement had been established prior to 1961, any such easement has been extinguished, contrary to the District Court finding. It has been extinguished by many inconsistent acts--(1) Schatzer's asking permission to use the road; (2) Downings asking permission to use the road; (3) Downings' admissions of having no easement; (4) Downings' withdrawal of the claim of a private prescriptive easement and (5) Grovers erecting and locking the gate in 1961. Grovers established statutory extinguishment by

7

inconsistent acts, and Montana law supports that conclusion. Section 70-17-111(3), MCA; Higbee, supra.

## II. Standard of Review

The standard of review for a judge sitting without a jury, pursuant to Rule 52(1), M.R.Civ.P., is that the court's findings shall not be set aside unless clearly erroneous. Thus, when the District Court's findings are based on substantial credible evidence, they are not clearly erroneous. Parker, supra. This record lacks substantial credible evidence to support a finding that Downings have a private prescriptive easement which is currently effective. On the contrary, Grovers have proven statutory extinguishment by inconsistent acts. The District Court is reversed on that issue.

The conclusion of law of the District Court that no public road was established or existed on the property of the defendants is affirmed.

The judgment of the District Court that plaintiffs have a private prescriptive easement across defendants' property is reversed.

J.A. Turnage
Chief Justice

8

We concur:

_John Conway Harrison_

_[signature]_

_L. C. Gulbrandson_

_R. C. McDonough_

_William E. Hunt Sr_

_John C. Sheehy_
Justices

9