No. 92-503

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

COLUMBIA GRAIN INTERNATIONAL,

Plaintiff and Respondent,

-v-

JAMES AND WILLIAM CERECK,
d/b/a CERECK BROTHERS,

Defendants and Appellants.



FILED

MAY 2 0 1993

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighth Judicial District,
               In and for the County of Cascade,
               The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Dirk Larsen, Larsen & Neill, Great Falls, Montana

        For Respondent:

        K. Dale Schwanke, Jardine, Stephenson, Blewett &
        Weaver, Great Falls, Montana

                              Submitted on Briefs:  March 4, 1993
                                          Decided:  May 20, 1993

Filed:

_____
                Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Defendants, James and William Cereck, appeal the decision of the District Court of the Eighth Judicial District, Cascade County, which awarded damages for breach of a contract to sell grain to plaintiff, Columbia Grain International. We affirm.

The issues for review are restated as follows:

1. Did the District Court err in finding that an oral contract existed for the sale of grain between the parties?

2. Did the District Court err in determining that the statute of frauds did not apply as a defense to enforcing the contract?

3. Did the District Court err in calculating damages?

James and William Cereck (the Cerecks) formed a partnership in 1972 to raise and market grain. Columbia Grain International (Columbia Grain) operates a grain elevator in Great Falls, Montana and regularly deals in buying and selling grain. This appeal concerns an alleged oral agreement between Columbia Grain and the Cerecks to buy and sell 6,500 bushels of No. 1 dark northern spring wheat to be delivered to Columbia Grain's Great Falls elevator in June of 1988.

Marcus Raba (Raba), a grain buyer for Columbia Grain, testified that he initially contacted James Cereck on May 2, 1988 concerning the purchase of the grain at issue here. At that time, James Cereck did not agree to sell. Raba futher testified that he had a total of six conversations with James Cereck throughout May, and that each time, Cereck did not commit to a sale. Raba was away

2

on vacation for two weeks in early June. Raba testified that on June 14, 1988, after he had returned from his vacation, he again spoke with James Cereck over the telephone and Cereck agreed to sell 6,500 bushels of No. 1 dark northern spring wheat at $4.05 per bushel, for a total contract price of $26,325.00.

Raba prepared a "workup" copy of the contract terms while he spoke with James Cereck. He testified that he read the terms back to James Cereck to make certain the terms were clear. He further testified that he considered the grain sold to Columbia Grain on June 14, 1988, when James Cereck told him over the telephone that he would sell 6,500 bushels of grain to Columbia Grain. Raba delivered a copy of the workup to a Columbia Grain merchandiser who in turn sold the grain to a third party.

Columbia Grain's office staff prepared a written Contract of Purchase from the workup copy, dated June 14, 1988. Raba then signed the Contract of Purchase and mailed two copies to the Cerecks at James Cereck's address. James Cereck testified that he received the copies within a day or two of their conversation and then left on a vacation of a week to ten days.

Neither of the Cerecks signed or returned the contract copies to Columbia Grain. However, Columbia Grain sold the grain in the open market in reliance on the sale.

The price of grain rose significantly after June 14, 1988. The Cerecks did not deliver the grain to Columbia Grain. On July 12, 1988, Raba contacted James Cereck about delivery of the grain.

3

James Cereck advised him that the Cerecks would not deliver the grain and did not feel obligated to deliver because neither of them had signed the contract. Raba asked James Cereck to reconsider. The next day, Raba again contacted James Cereck and Cereck again refused to deliver the grain. The Cerecks later sold their grain to another elevator for $4.45 per bushel. On July 14, 1988, Columbia Grain purchased 10,000 bushels of grain from another seller for $4.68 per bushel.

Columbia Grain brought this action against the Cerecks to recover contract damages. The Cerecks raised the statute of frauds defense in a motion to dismiss which the District Court denied. The Cerecks later filed an answer generally denying the existence of a contract. The Cerecks did not affirmatively plead the statute of frauds as a defense, nor did they move to amend the pleadings to add the statute of frauds as a defense. After trial, the District Court found that an oral contract existed between the parties and concluded that the contract was enforceable because the Cerecks had waived their right to rely on the statute of frauds defense by not affirmatively pleading it in their answer. The Court further found that damages equaled the difference between the contract price of $4.05 per bushel and the $4.68 per bushel that Columbia Grain paid to replace the grain on July 14, 1988.

## I.

Did the District Court err in finding that an oral contract existed between Columbia Grain and the Cerecks for the sale of

4

6,500 bushels of grain?

The District Court found that the Cerecks and Columbia Grain entered into an oral contract. Under its terms, Columbia Grain agreed to buy and the defendants agreed to sell 6,500 bushels of No. 1 dark northern spring wheat for $4.05 per bushel. The grain was to be delivered to Columbia Grain's Great Falls elevator in June 1988. The court further found that the contract terms were as alleged by Columbia Grain and that the Cerecks had breached this express oral contract.

The Cerecks contend that there is no contract here because there was no mutual consent of the parties as required by § 28-2-102, MCA. They argue that they consented only to discuss the price offered by Columbia Grain, but did not consent to sell the grain on June 14, 1988 at the price of $4.05 per bushel. They contend that James Cereck communicated his lack of consent by telling Raba that he would have to discuss the proposed price with his brother, William Cereck, and that he expressed a desire not to enter into a contract until after he had discussed Columbia Grain's proposal with his brother.

Columbia Grain contends that § 30-2-204, MCA, provides that a contract for the sale of grain can be made in any manner sufficient to show agreement. Section 30-2-204, MCA, provides in pertinent part:

> **Formation in general.** (1) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the

5

existence of such a contract. . . .

The District Court's finding that an oral contract existed was based on the prior course of dealing between the parties and the general practices in the industry.

The standard of review for a district court's findings of fact is whether they are clearly erroneous. Interstate Production Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 322, 820 P.2d 1285, 1287. To determine whether a finding is clearly erroneous, this Court uses the following three-part test: (1) the Court will review the record to see if the findings are supported by substantial evidence; (2) if they are supported by substantial evidence, we determine if the trial court has misapprehended the effect of the evidence; and (3) if the findings are supported by substantial evidence and the trial court has not misapprehended the effect of the evidence, the Court may still find that a finding is clearly erroneous although there is evidence to support it, if a review of the record leaves the Court with the definite and firm conviction that a mistake has been made. DeSaye, 820 P.2d at 1287.

The District Court's finding is supported by substantial evidence. The evidence established that the Cerecks were experienced in farming and the sale of crops. Both were raised on a farm and, at the time of this contract, had been partners in their grain operation for eighteen years. Both Cerecks testified they were familiar with the methods farmers use to market their grain.

6

The evidence presented at trial also established that during the period from September 26, 1980, through February 12, 1988, the Cerecks entered into eighteen separate grain sales transactions with Columbia Grain. Each time, Columbia Grain prepared a contract on its standard form and mailed the first two copies to the Cerecks at James Cereck's address. The Cerecks never returned signed copies of any of the former contracts.

Testimony established that it is not unusual for farmers not to return signed contracts to the buyer. Other testimony established that Columbia Grain buys most of its grain over the telephone and mails contracts to the selling farmer. Rada testified that this is standard industry practice and that it is impracticable to buy grain in other ways because of the distance involved and daily grain price fluctuations.

When a farmer has agreed to sell grain over the telephone, it is Columbia Grain's business practice to repeat the terms back to the farmer to make sure the farmer has agreed to them. A workup copy is not submitted to accounting department staff unless a sale is agreed to. When a sale is agreed to, the information is then transcribed by the accounting department onto a printed "Contract of Purchase" form which is signed by the grain buyer. Two copies of the Contract of Purchase are then mailed to the seller.

Typically, James Cereck handled grain sales transactions for the partnership. He had dealt with Raba on several occasions in the previous one and one-half years. At the time of trial, Raba

7

had been a grain buyer for twelve years. Raba also testified that he keeps a daily record of his conversations with farmers. He testified that there were times he and James Cereck would communicate frequently and James Cereck would not agree to sell. No contract was mailed to the Cerecks in those instances. Raba and representatives of other grain companies which had also dealt with the Cerecks testified that James Cereck always sold the grain for the partnership and that he had never told them he would have to discuss an offer with his brother before a sale could be final. Raba had spoken with James Cereck on six separate days in May of 1988 regarding the sale of the grain involved in this action. Raba was gone for a two-week vacation in early June. When he returned, he and James Cereck had the conversation at issue here.

Clearly, James Cereck was experienced in selling grain. From prior dealings with Columbia Grain, he was also familiar with Columbia Grain's procedures. There is substantial evidence in the record to support the findings made by the District Court. We conclude that the conduct of both parties is sufficient to show consent to the contract here. We further conclude that the District Court has not misapprehended the effect of the evidence and our review of the record does not leave us with a firm and definite conviction that a mistake has been made.

We hold the District Court correctly determined that an oral contract existed between Columbia Grain and the Cereck's to buy and sell 6,500 bushels of grain.

## II.

Did the District Court err in determining that the statute of frauds did not apply as a defense to enforcing the contract?

The statute of frauds provision in the Montana Uniform Commercial Code states that a contract for the sale of goods for $500.00 or more is not enforceable unless in writing and signed by the party against whom enforcement is sought. Section 30-2-201(1), MCA. The contract here involved the sale of goods for over $500.00. However, the District Court concluded that the Cerecks had failed to affirmatively plead the statute of frauds as a defense, had thereby waived their right to rely on the statute of frauds as a defense and were barred from using the defense.

The Cerecks argue that they should be allowed to use the statute of frauds defense because they raised it in a motion to dismiss, because both parties had argued it before the District Court during the pleadings stage of the proceedings, and because Columbia Grain was aware the Cerecks were relying on the defense. They further contend that Columbia Grain was precluded from objecting to the use of the defense because it raised the objection in its case in chief, was prepared to argue it and did not show any prejudice by allowing evidence concerning the defense.

We review a district court's interpretations of the law to determine whether they are correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 803 P.2d 601.

The Cerecks' motion to dismiss and subsequent motion for

9

summary judgment were both based on the statute of frauds defense. However, they made no motion to amend their answer at any time to include the affirmative defense of the statute of frauds. Rule 8(c), M.R.Civ.P., provides:

> **Affirmative defenses.** In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, <u>statute of frauds</u>, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. . . . (Emphasis supplied.)

Rule 8(c) precludes a defendant from using the statute of frauds as a defense when it has not been raised in the pleadings.

The Cerecks first alluded to the statute of frauds defense in their motion to dismiss. They again argued the defense in their summary judgment motion. The Cerecks contend that Rule 15(b), M.R.Civ.P., allows them to rely on the defense because Columbia Grain impliedly consented to the defense. Rule 15(b), M.R.Civ.P., provides:

> **Amendments to conform to the evidence.** When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. . . .

This Court has previously addressed this same issue with regard to waiver as an affirmative defense. Waiver was not raised in either the defendant's answer or in a subsequent motion for summary judgment in Butte Teachers' Union Local No. 332 v. Board of Trustees (1982), 201 Mont. 482, 655 P.2d 146. In that case, the

10

defense was first presented in a memorandum and supporting affidavit in opposition to the plaintiff's motion for summary judgment. Because the plaintiff continued to maintain its objection to the defendant's allegations of waiver, this Court stated:

> Therefore, it cannot be said that an issue not raised by the pleadings was tried by the express or implied consent of the parties, as Rule 15(b), M.R.Civ.P. would permit. Cf. Reilly v. Maw (1965), 146 Mont. 145, 405 P.2d 440, wherein implied consent was found on the basis that evidence extrinsic to the claim plead, was admitted at trial without objection. (Empahsis in original.)

Butte Teachers' Union, 655 P.2d at 148. Although the motion to dismiss may have put Columbia Grain on notice that the Cerecks intended to rely on the statute of frauds as a defense, Butte Teachers' Union requires that the opposite party raise no objection in order for implied consent to operate under Rule 15(b), M.R.Civ.P.

The Cerecks claim that Columbia Grain did not object to the use of the statute of frauds in any of its documents or at the hearing on the summary judgment motion and, further, that Columbia Grain argued the merits of the defense. The Cerecks claim, therefore, that Columbia Grain impliedly consented and the pleadings should be treated as amended to include the defense. The Cerecks also claim that Columbia Grain impliedly consented by its actions at trial in eliciting testimony from witnesses and by arguing the defense. Specifically, they cite the following from

11

the transcript, where Columbia Grain's counsel responded to the Cerecks' objection to the introduction of a loan form signed by James Cereck as being irrelevant: "[A]gain I think it goes to the practice of farmers, the business of farmers, and I think it relates again back to what I anticipate is going to be the defense here with respect to the statute of frauds."

Columbia Grain contends that it has maintained its objection to the Cerecks' use of the defense throughout the proceedings. The Cerecks admit that Columbia Grain did object at the trial to the use of the statute of frauds as a defense for failure to plead it. We conclude that by objecting at trial to the use of the statute of frauds for failure to plead it and by resisting the defense at pre-trial proceedings, Columbia Grain did not impliedly consent under Rule 15(b), M.R.Civ.P., to the Cerecks' use of the statute of frauds defense.

We hold the District Court correctly determined the statute of frauds did not apply as a defense to enforcing the contract.

### III.

Did the District Court err in calculating damages?

The District Court determined that Columbia Grain bought other grain on July 14, 1988 to replace the grain the Cerecks did not deliver. Columbia Grain purchased the replacement grain for $4.68 per bushel, which turned out to be the high price of the season. The court awarded damages of $4,095.00 based on the difference between $4.68 and the $4.05 contract price.

12

The Cerecks contend that Columbia Grain failed to show any damages resulting from the contract breach. Alternatively, they contend that the only damages proven are $.07 per bushel, the margin of profit for this transaction as testified by Raba. They also argue that no evidence was offered to show when the grain was purchased or for what price and, therefore, the damages are speculative and Columbia Grain has not met its burden of proving damages as required under § 27-1-311, MCA.

The Cerecks' arguments have no merit. Damages for breach of a contract for the sale of goods are governed by § 30-2-711(1), MCA, which provides in pertinent part:

> **Buyer's remedies in general . . . .** (1) Where the seller fails to make delivery or repudiates . . . then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (30-2-612), the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid:
> (a) "cover" and have damages under the next section as to all the goods affected whether or not they have been identified to the contract . . .

Section 30-2-712, MCA, provides:

> **"Cover" -- buyer's procurement of substitute goods.** (1) After a breach within the preceding section the buyer my "cover" by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller.
> (2) The buyer may recover from the seller as damages the <u>difference between the cost of cover and the contract price together with any incidental or consequential damages</u> as hereinafter defined (30-2-715), but less expenses saved in consequence of the seller's breach. . . (Emphasis supplied.)

In addition to the provisions outlined above, § 30-2-713, MCA, provides that the measure of damages for nondelivery or repudiation

13

is the difference between the market price and the contract price at the time the buyer learns of the breach.

Columbia Grain covered the undelivered grain without unreasonable delay. They had no way to know that $4.68 would be the high price that season for No. 1 dark northern spring wheat. Columbia Grain testified that to meet its obligations to the buyer, it could not wait longer for delivery from the Cerecks after James Cereck refused to deliver on July 13, 1988. We conclude the Montana Uniform Commercial Code provision for damages based on cost to cover as used by the District Court was the correct measure of damages here.

We hold the District Court correctly calculated damages. Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

14

May 20, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Dirk Larsen
Larsen & Neill
P.O. Box 1692
Great Falls, MT  59403

K. Dale Schwanke
Jardine, Stephenson, Blewett & Weaver
P.O. Box 2269
Great Falls, MT  59403

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy