NO.   94-164

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

GREENWALT  FAMILY  TRUST,  GARY  GREENWALT
and  LINDA  GREENWALT,  TRUSTEES,

Plaintiffs  and  Appellants,

v.

RICHARD  L.  KEHLER,  JR.,

Defendant  and  Respondent.

FILED

NOV 21 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL  FROM:   District  Court  of  the  Thirteenth  Judicial  District,
In  and  for  the  County  of  Big  Horn,
The  Honorable  Russell  K.  Fillner,  Judge  presiding.


COUNSEL  OF  RECORD:

For  Appellants:

James  E.  Torske,  Attorney  at  Law,
Hardin,  Montana

For  Respondents:

Martin  J.  Elison,  Attorney  at  Law,
Hardin,  Montana


Submitted  on  Briefs:   October  5,  1994

Decided:   November  21,  1994

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Plaintiffs **Greenwalt** Family Trust, Gary Greenwalt and Linda **Greenwalt,** trustees (the Greenwalts), and defendant Richard **L.** Xehler, Jr., own adjacent tracts of land. The Greenwalts filed suit in the Thirteenth Judicial District Court, Big Horn County, claiming they had acquired a prescriptive easement across the northerly 30 feet of **Kehler's** property. The Greenwalts sought to permanently enjoin Kehler from interfering with their alleged easement. The District Court decided that the Greenwalts failed to establish a prescriptive easement. The Greenwalts appeal from that decision. We affirm

The issue we find dispositive on appeal is:

Did the District Court err when it concluded that the Greenwalts failed to prove the elements necessary to establish a prescriptive easement?

<u>FACTUAL BACKGROUND</u>

The Greenwalts and Kehler own adjacent **40** acre tracts of land south of St. Xavier in Big Horn County, Montana. The **Greenwalts'** property consists of the NW¼NE¼, Section 16, Township 5 South, Range 32 East, M.P.M. Kehler's property consists of the NE¼NE¼, Section 16, Township **5** South, Range 32 East, M.P.M. There is a large irrigation ditch running along the northern edge of both the **Greenwalts'** and **Kehler's** properties. Montana State Highway 313 is located long the west side of Section 16, and a gravel county road runs along the east side of Section 16.

The Greenwalts' predecessor in interest is Gary's father, Robert Greenwalt. The Greenwalts obtained the land from Robert by a warranty deed on March 29, 1985. Robert owned and farmed the property from 1966 through 1985, and claimed he continuously used the north 30 feet of Kehler's property to remove crops to the gravel county road from 1966 to 1985. Kehler acquired his property by a quit claim deed from Aetna Insurance Company on March 27, 1990.

Henry Schneider, Jr., owns property bordering the Greenwalts to the north. To the north of both parties' properties is a permanent elevated road which runs the length of Section 16. The ditch runs through a culvert, allowing access to the Greenwalts' property across the ditch from the elevated road. The alleged easement at issue crosses the north end of both the Greenwalts' and Kehler's properties, just south of the ditch. The Greenwalts, as well as other people, have used the purported easement across the north end of Kehler's property as access for irrigation and for farming.

Clyde Hawks, one of Kehler's predecessors, installed culverts at the northeast corners of both the Greenwalts' and Kehler's properties sometime after Robert Greenwalt purchased the property in 1966. The District Court found that the culverts were intended to channel waste water and to provide a bridge to access the Greenwalts' property. The court found that this installation indicated reciprocal permission to drive over the alleged road for farming purposes.

Schneider and his family owned and leased properties in the vicinity of the claimed easement for over 50 years. He stated that he and his family sometimes used the alleged easement to irrigate and farm their property across the ditch to the north. Schneider testified that he had always observed numerous people using the route across Kehler's property. He saw Bob and Gary Greenwalt, Kenneth Schneider, Floyd Boeckel, Doug Greenwalt, and ditch riders using the road for convenience to irrigate and farm nearby crops.

Schneider has given the Greenwalts permission to cross the property to the north side of the ditch to access their property. Schneider testified that over many years he acquired a good understanding of the prevailing community arrangement, which is that every landowner, since before the Greenwalts' predecessor purchased the property, could access their property across their neighbors' land, so long as they did not injure the owners' crops or property. Schneider testified that he occasionally drove on the low road, but never during the winter or when Kehler was farming or irrigating.

The Greenwalts offered Warren Hill, one of Kehler's predecessors, as a witness. During the 1970s, Hill farmed the property for at least three crop years and he stated that he farmed the property right up to the ditch. Hill testified that the claimed road was not actually a road, but people drove and impacted a track on it every year. He said it was common practice to use the packed portion and he left it there for himself, but nobody drove it when he irrigated because it was too muddy. Hill allowed

4

people to use the alleged roadway, so long as they did not damage his crops. He testified that there was an implicit good neighbor policy to allow others access. The District Court also found that the Greenwalts and their predecessor honored a prevailing access policy by not driving across the road or interfering with Hill's use when he was plowing, seeding, or installing ditches.

Gary Greenwalt testified that he used the road in the spring and in the fall, and sometimes for hay in the winter, and that he knew other people used the road. During the time period from 1987 until Kehler purchased the property in 1990, Aetna had title to the property and leased it to the LV Partnership which farmed the land. Kehler was a partner in LV at that time. The District Court asked Gary Greenwalt whether Aetna had notice that the Greenwalts were traveling the road, but Gary Greenwalt stated he was not certain whether Aetna knew.

Robert Greenwalt testified he used the road year round from 1966 until 1985 because he could not use any other road to get his crops out. However, he acknowledged that he did not use the road when it was muddy. Neither Robert nor Gary Greenwalt ever placed or replaced culverts, or repaired or maintained the alleged road.

Finally, Kehler testified that there was a permissive use policy in the area, including the time period he was a partner in the LV Partnership. Kehler honored the prevailing access policy allowing neighbors to cross his land. Kehler added that he observed no tracks on the purported roadway during the winter and it was neighborly not to drive across others' property when it was

5

*muddy.* He stated that on January 10, 1993, he revoked the good neighbor policy because of a confrontation with the Greenwalts.

After the confrontation, the Greenwalts sought a permanent injunction to prevent Kehler from interfering with the access to their property. The District Court originally issued a temporary restraining order, and order to show cause, without notice to Kehler. After a hearing on the order to show cause, the court issued a preliminary injunction. The trial was held December 6, 1993.

Based on its findings and conclusions, which were issued on January 31, 1994, the District Court denied a permanent injunction and dissolved the preliminary injunction.

## DISCUSSION

Did the District Court err when it concluded that the Greenwalts failed to prove the elements necessary to establish a prescriptive easement?

The Greenwalts challenge the District Court's findings and conclusions pursuant to which their claim for a prescriptive easement was denied. This Court will not set aside a district court's findings of fact unless they are clearly erroneous. *Columbia Grain Int'l v. Cereck* (1993), 258 Mont. 414, 417-18, 852 P.2d 676, 678. We also recognize that due regard is given to the trial court judge to determine the witnesses' credibility. *Rappold v. Durocher* (1993), 257 Mont. 329, 331, 849 P.2d 1017, 1019. We review a district court's conclusions of law to see if the court's

interpretation of the law was correct. *In re Marriage of Barnard* (1994), 264 Mont. 103, 106, 870 P.2d 91, 93 (citing *In re Marriage of Burris* (1993), 258 Mont. 265, 269, 852 P.2d 616, 619).

In order to establish a prescriptive easement, the Greenwalts must prove that their use of the claimed roadway was open, notorious, exclusive, adverse, continuous, and uninterrupted for the full statutory period. *Downing v. Grover* (1989), 237 Mont. 172, 175, 772 P.2d 850, 852. In Montana, the statutory period is five years. Section 70-19-401, MCA.

Open and notorious is "'a distinct and positive assertion of a right hostile to the rights of the owner and must be brought to the attention of the owner.'" *Downing*, 772 P.2d at 852 (quoting *Poepping v. Neil* (1972), 159 Mont. 488, 492, 499 P.2d 319, 321). Continuous means "'it is necessary to have use made often enough to constitute notice of the claim to the potential servient owner.'" *Downing*, 772 P.2d at 852 (quoting Powell & Rohan, *Powell on Real Property*, Vol. 3, § 413, pp. 34/124-34/126 (1987)). Uninterrupted means "'use not interrupted by the act of the owner of the land or by voluntary abandonment of the party claiming the right.'" *Downing*, 772 P.2d at 852 (quoting *Scott v. Weinheimer* (1962), 140 Mont. 554, 374 P.2d 91). "An '[e]xclusive' use means that the claimants' right to use the right of way is independent of a like right of way in another." *Cope v. Cope* (1971), 158 Mont. 388, 392, 493 P.2d 336, 339. Finally,

7

> [t]o be adverse, the use of the alleged easement must be exercised under a claim of right and not as a mere privilege or license revocable at the pleasure of the owner of the land; such claim must be known to, and acquiesced in, by the owner of the land.

*Keebler v. Harding* (1991), 247 Mont. 518, 521, 807 **P.2d** 1354, 1356-57.

"All elements must be proved in a case such as this because 'one who has legal title should not be forced to give up what is rightfully his without the opportunity to know that his title is in jeopardy and that he can fight for it. '"*Downing,* 772 **P.2d** at 852 (quoting *Grimsley v. Estate of Spencer* (1983), 206 Mont. 184, 670 **P.2d** 85, 92'93). However, we recently clarified our rule regarding a presumption of adversity.

> While a presumption of adverse use or adversity arises *once the claimant establishes open, notorious, exclusive, continuous, and uninterrupted (unmolested) use for the full statutory period,* it remains the burden of the easement claimant to prove each of those remaining elements of prescription, and unless and until the claimant proves those elements under the general rule, the burden does not shift to the land owner to prove permissive use or license.

*Warnack v. Coneen Family Trust* (Mont. 1994), 879 **P.2d** 715, 723, 51 St. Rep. 739, 744 (citations omitted). If the presumption of adverse use is established, the other party may overcome that presumption by showing that the use was permissive. Therefore, to succeed, the Greenwalts had to prove all the elements, except adversity, in order to shift the burden to Kehler to show permissive use.

As required by *Downing,* the Greenwalts had to prove that their use of the alleged route across Kehler's field was open and notorious and a establish positive assertion of a right hostile to

8

the owner which was brought to the owner's attention. *Downing*, 772 P.2d at 852. Gary Greenwalt testified that he established an easement between 1985-1992 by using the roadway as a matter of right for at least the five-year period.

However, assuming there was sufficient evidence to entitle the Greenwalts to the presumption of adversity, there was substantial evidence to support the District Court's finding that the local custom was to allow neighbors to cross the edges of neighboring fields. Where there is a community understanding, it is considered permission: there is no prescription if the use is allowed by express or implied permission. *Wilson v. Chestnut* (1974), 164 Mont. 484, 490-91, 525 P.2d 24, 27. In *Wilson*, we also recognized that there must be some.circumstances or act to indicate the use was not permissive, and prescription does not arise if the use is originally from amity and continued in recognition of the owner's title. "If the owner shows permissive use, no easement can be acquired since the theory of prescriptive easement is based on adverse use." *Rathbun v. Robson* (1983), 203 Mont. 319, 322, 661 P.2d 850, 852 (citation omitted).

More recently, in *Public Lands Access Ass'n, Inc. v. Boone and Crockett* (1993), 259 Mont. 279, 856 P.2d 525, we recognized that a prescriptive easement does not arise from neighborly accommodation. In *Boone&Crockett*, testimony indicated that use of the road occurred because of neighborly accommodation which was insufficient to establish an easement by prescription. *Boone& Crockett*, 856 P.2d at

528. As we noted in *Wilson,* use by express or implied permission, even if continuous, is not sufficient. *Wilson,* 525 P.2d at 27. In *Boone & Crockett,* we also reiterated important testimony cited in *Rathbun* , 661 P.2d at 852:

> [s]everal witnesses testified concerning local customs that began in the homesteading days concerning access across another's land. There existed an understanding among landowners that permission was not required every time a person needed to cross his neighbor's land. Permission was automatic if the individual closed the gates and respected his neighbor's property.

*Boone & Crockett,* 856 P.2d at 528 (alteration in original).

The Greenwalts contend there was insufficient evidence to support the District Court's finding that there was a permissive community practice. However, there was conflicting testimony regarding this issue. We have previously recognized that the district court is in the best position to resolve conflicts and judge the credibility of the witnesses pursuant to Rule 52(a), M.R.Civ.P. *See Thomas v. Barnum* (1984), 211 Mont. 137, 143, 684 P.2d 1106, 1110.

Numerous witnesses testified that there was a neighborhood policy of allowing others to travel across the edges of the fields to gain easier access to their own property. The District Court found, and testimony indicates, that nobody drove on the end of Kehler's field during plowing, planting, or irrigating. Although nobody asked permission, users of the alleged roadway were aware that they were not to interfere with Kehler's property. Even the Greenwalts testified they would not interfere with Kehler's

10

property.  This indicates use subordinate to the true legal title holder's interest.

In conclusion, there was substantial evidence to support the District Court's finding that the Greenwalts' use of Kehler's property was permissive, rather than adverse, and we conclude that this critical finding was not clearly erroneous.  Without adverse use, the elements of a prescriptive easement were not established. Therefore, the judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

11