No. 90-397

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

HAROLD MILDENBERGER and MARILYN
MILDENBERGER, husband and wife,

     Plaintiffs and Respondents,

-vs-

JOSEPH GALBRAITH and DENISE
GALBRAITH, husband and wife,

     Defendants and Appellants.

FILED

JUL -1 1991

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Ravalli,
The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

        David L. Pengelly; Knight, Maclay & Masar, Missoula,
        Montana

    For Respondents:

        John D. Greef, Attorney at Law, Hamilton, Montana

    For Amicus:

        Hon. Marc Racicot, Attorney General; Harley R.
        Harris, Assistant Attorney General, Helena, Montana
        Tim D. Hall, Legal Counsel, Department of Natural
        Resources, Helena, Montana

Submitted:  May 14, 1991

Decided:  July 1, 1991

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Appellants, Joseph and Denise Galbraith appeal from the judgment of the District Court of the Fourth Judicial District, Ravalli County, Montana, holding that Harold and Marilyn Mildenberger have a prescriptive easement in the water ditch on appellants' property and a stockwater right with a priority date of September 1, 1927, for water arising on lands currently owned by a third party. We affirm in part and reverse in part.

There are two issues presented for review:

1. Did the District Court err in finding that the Mildenbergers have an existing water right with a 1927 priority date?

2. Did the District Court err in finding that the Mildenbergers have a prescriptive easement in the water ditch on the Galbraiths' property?

The Mildenbergers and the Galbraiths are adjacent landowners in Ravalli County. The Galbraiths own real property in Sections 5, 8, and 9, of Township 5 North, Range 20 West, P.M.M., Ravalli County. The Mildenbergers own real property north of the Galbraiths' property, also in Section 5. Letters A through I, illustrated on the following map, will be points referred to throughout this opinion.



MILDENBERGER Property

NEWMAN/KERN Property

GALBRAITH Property

Fish Hatchery

TRULOCK Property

## LEGEND

A. Trulock Property where water surfaces from springs.

B. Point where ditch enters Galbraiths' property.

C. Point where ditch crosses Fish Hatchery Road.

D. West Branch of ditch on Galbraith property.

E. Channel arising on Newman/Kern property.

F. Point where Newman-Kern channel crosses Fish Hatchery Road and joins disputed ditch.

G. Hedge ditch on Galbraith Property.

H. Point where combined flows of disputed ditch and Newman-Kern channel enter Hedge ditch on Galbraith property.

I. Hedge ditch on Mildenberger property.

3

Several naturally occurring springs are located on the west half of Section 9 (point A) from where the water in question surfaces. The property is currently owned by Ron and Janet Trulock, who are not parties in this litigation. Water arising from the springs flows in a northwesterly direction in an open channel passing onto the Galbraiths' property at point B. The water continues to flow northward in the ditch system on the Galbraiths' property past points C and F to point H where the water enters the Hedge Canal and finally flows on to the Mildenbergers' property at point I.

In addition to the springs at point A on the Trulock property, there are also springs located on the Newman-Kern property at Point E. The water arising from these springs flows northward and merges with the disputed ditch at point F. The portion of the ditch that gave rise to this litigation lies between points C and F.

The ditch system in question was developed by the Galbraiths' predecessor, Marcus Daly, for irrigation purposes, sometime prior to 1927. Water flowed through the ditch year-around and was used by the Galbraiths' predecessors for irrigation during the summer months and stockwater during the winter months. Since approximately 1927, the Mildenbergers and their predecessors have used the water entering their property in the Hedge Canal for stockwater.

In the 1930's, some of the springs on Section 9 (point A) were developed by the State Fish and Game Department in order to convey

4

the water to a fish hatchery (shown on map). Spring water diverted to the fish hatchery bypasses the ditch system and the Hedge Canal, and consequently, is never available for use on the Mildenberger property.

The testimony indicated that the first development of the springs located on Section 9 that resulted in developed spring water flowing through the ditch on the Galbraiths' property, did not occur until the mid-1960's.

The Mildenbergers owned the property in Section 5 (north of the Galbraiths' property at point I) from March, 1962, until April, 1964. They reacquired it in October, 1973, and have owned it since that time. The property was owned by Dr. Jack Mahoney from April, 1964, to October, 1973. Dr. Mahoney also owned the current Trulock property in Section 9 (point A) during approximately the same time period. Dr. Mahoney sold the property in Section 9 in April, 1973, to the Mildenbergers, who then conveyed the property to Larry McCrossin in August, 1973. Ron and Janet Trulock are the current owners of this property.

The testimony shows that during his ownership of the property, Dr. Mahoney used a dragline to develop and clear the channel from the spring at point A to the edge of the Galbraiths' property at point B. He also enlarged an existing pond and drained water off this land through the pond into the channel. The testimony also shows that Dr. Mahoney's purposes in developing these springs were to benefit the land in Section 9 and provide stockwater for his

5

land in Section 5; the same parcel currently owned by the Mildenbergers.

Larry McCrossin testified that he had further developed the springs in Section 9 and had filed water rights on the water from these developed springs during his ownership of the property between 1973 and 1980.

In the fall of 1988, the Galbraiths retained the services of a local attorney to examine the State water right records and determine whether there were any claimed water rights in the portion of the ditch between points C and F. There were no water rights on record and, once advised by counsel of this fact, the Galbraiths proceeded to fill in the ditch between points C and F, and divert the flow of water to point D. Galbraith testified that as part of his plan to improve the property, he wished to clean up and fill in the ditch between points C and F. On December 8, 1988, due to the Galbraiths' efforts in improving their property, the northward flow of water from point C had completely stopped. The Mildenbergers demanded that the Galbraiths reopen the ditch and when they refused to do so, this litigation ensued.

A non-jury trial was held on March 26, 1990, and judgment was entered in favor of the Mildenbergers, finding they have a prescriptive easement in the disputed irrigation ditch on the Galbraiths' property, and a stockwater right in the amount of 200 miner's inches with a priority date of September 1, 1927, to groundwater arising on land currently owned by Ron and Janet

Trulock. The District Court held that the Mildenbergers were exempt from the statutory filing requirements of the Montana Water Use Act and awarded the Mildenbergers damages in the sum of $100, their reasonable attorney's fees, and court costs. The Galbraiths appeal.

The first issue is whether the District Court erred in finding that the Mildenbergers have an existing water right in the amount of 200 miner's inches with a 1927 priority date.

Without getting into the merits of this issue, it will suffice to say that the District Court "may grant injunctive or other relief which is necessary and appropriate to preserve property rights or the status quo pending the issuance of the final decree." Section 85-2-406(2), MCA. The District Court lacks the jurisdiction to issue a final decree with regard to the water right.

The jurisdiction to interpret and determine existing water rights rests exclusively with the water courts. Section 3-7-501, MCA.

The question then becomes whether the District Court's judgment was "necessary and appropriate" as required in § 85-2-406(2), MCA. A review of the record indicates an absence of any evidence to support the District Court's determination that the Mildenbergers had a water right in the amount of 200 miner's inches. Such a final adjudication of a water right is the function

7

of the water court, and not the District Court.

The judgment with respect to the Mildenbergers' water right in the amount of 200 miner's inches is therefore vacated.

The second issue on appeal is whether the District Court erred in finding that the Mildenbergers have a right by prescriptive easement in the ditch on the Galbraiths' property.

This Court has previously held that ditch rights and water rights are separate and distinct property rights. Connolly v. Harrel (1936), 102 Mont. 295, 57 P.2d 781. Therefore, our determination of whether or not a ditch right exists is entirely bifurcated from the water right issue.

In order to establish a prescriptive easement a party must show open and notorious, exclusive, adverse, continuous and uninterrupted use of the easement for the statutory period of five years. Morrison v. Higbee (1983), 204 Mont. 515, 668 P.2d 1025. The Galbraiths argue that the Mildenbergers have failed to present any evidence of an adverse, open and notorious use of the ditch in question.

It is the Galbraiths' contention that the Mildenbergers merely made use of the unconsumed water that entered upon their property via the Hedge Canal after flowing through the Galbraiths' ditch. They argue that such use does not amount to open and notorious use, nor has there been any other actions by the Mildenbergers that can be construed as adverse or hostile. We disagree.

To be adverse, the use of a claimed right must be hostile and

not permissive.  Ewan v. Stenberg (1975), 168 Mont. 63, 541 P.2d 60.  Testimony at trial clearly established the fact that neither the Mildenbergers nor their predecessors ever asked permission of anyone to use the ditch.  In the mid-1960's, the Mildenbergers' predecessor in interest, Dr. Mahoney, increased the flow of water through the ditch for the express purpose of increasing the use of water on the property currently owned by the Mildenbergers.  At no time did he seek permission to run his water through the ditch.

Adverse use may be presumed whenever there has been unexplained use of the alleged easement for the five-year statutory period.  This presumption may be overcome by evidence that the use was permissive.  Keebler v. Harding (Mont. 1991), 807 P.2d 1354, 1357, 48 St.Rep. 282, 283.  The Galbraiths have failed to produce any evidence to show a permissive use of the ditch.  In fact, Berna Martinson, the Galbraiths' predecessor in interest, testified at trial that the Mildenbergers' use was never permissive.

The Galbraiths argue that the Mildenbergers also failed to establish an open and notorious use.  It has long been established that an open and notorious possession is such that it will give the owner of the property right "either actual knowledge of the hostile claim, or [be] of such a character as to raise a presumption of notice, or [be] so patent that the owner could not be deceived." Collins v. Thode (1918), 54 Mont. 405, 411-412, 170 P. 940, 941.

The undisputed testimony of Berna Martinson establishes sufficient evidence that the servient estate owner had knowledge

9

of the Mildenbergers' claim in the ditch:

> [H]istorically [the ditch] had always run that way and everybody respected the fact that's where the water goes, . . . . we always knew that that's where the water went, and we respected that rights.

The Galbraiths argue that the Mildenbergers never physically entered on the property, and therefore have not made any asserted right hostile to the interests of the Galbraiths. However, physical presence is merely evidence used to show knowledge on the part of the servient estate owner. There is other sufficient evidence in the record to support a finding of knowledge on the part of the Galbraiths or their predecessors.

The District Court's findings will not be set aside when based upon substantial credible evidence. Downing v. Grover (1989), 237 Mont. 172, 772 P.2d 850. The record indicates substantial evidence exists to support the finding of a prescriptive easement.

We vacate the District Court's finding of a water right in the amount of 200 miner's inches, and affirm its finding of an easement by prescription.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

10

_____

R. C. McDonough

_____
Justices

11

Justice Karla M. Gray, specially concurring.


I concur in that portion of the majority opinion addressing the water right. I concur in the result reached by the majority with regard to the prescriptive easement in the ditch.

My analysis of certain testimony differs somewhat from that of the majority. The majority characterizes the testimony of Berna Martinson, a predecessor of the Galbraiths, as showing that "the Mildenbergers' use was never permissive." I read Ms. Martinson's testimony differently. It does not appear to me that either her testimony or any other testimony or evidence establishes whether the use was permissive or nonpermissive at its inception. Indeed, Ms. Martinson's recollections regarding the ditch begin more than twenty-five years after the initial use of the ditch by the Mildenbergers' predecessors.

Ms. Martinson's testimony does suffice to meet the "adverse" showing required, however. She testified that the "rights" of the Mildenbergers' predecessors to use the ditch were recognized at least as early as the mid-1950s, the time of her earliest firm recollection of the ditch. As this Court has stated:

> To be adverse, the use [of the alleged easement] must be exercised under a claim of right and not as a mere privilege or license revocable at the pleasure of the owner . . . ; such claim [of right] must be known to, and acquiesced in by, the owner. . . .

Taylor v. Petranek (1977), 173 Mont. 433, 437, 568 P.2d 120, 122. Thus, while we do not have a single distinct and positive assertion of a claim of right to use the ditch, Ms. Martinson's testimony

12

indicates that a claim of right was known to exist, and acquiesced in, at least as early as 1955. This testimony provides sufficient evidence to support the District Court's finding that the use of the ditch was "adverse."

_____
Justice

13