IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 91-386

BAKER DITCH COMPANY,

        Petitioner,

-v-

THE DISTRICT COURT OF THE EIGHTEENTH
JUDICIAL DISTRICT OF THE STATE OF
MONTANA, IN AND FOR THE COUNTY OF
GALLATIN, THE HONORABLE THOMAS A.
OLSON, and THE HONORABLE FRANK M.
DAVIS, Presiding Judges,

        Respondents.

)  O P I N I O N
)     AND
)  O R D E R

FILED

JAN - 9 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

The original opinion and order in this case was dated November 7, 1991, and filed with the Clerk of the Supreme Court on that date. We herewith clarify that original opinion and order. Our original opinion and order in this cause dated November 7, 1991 is hereby withdrawn.

This is an original proceeding on application for writ of supervisory control. The petitioner has asked this Court to exercise its supervisory control and to direct the District Court of the Eighteenth Judicial District and its Water Commissioner to distribute the waters of the West Gallatin River in accordance with the laws of the State of Montana and more particularly in accordance with Cause No. 3850, W.D. Bell v. F.K. Armstrong of the Ninth Judicial District in and for the County of Gallatin, which adjudicated the water rights of the petitioner and other water rights in the West Gallatin River.

This Court accepts supervisory control in order to promote

1

judicial economy and eliminate needless litigation, State ex rel. First Bank v. Dist. Court (1989), 240 Mont. 77, 782 P.2d 1260; State ex rel. Fitzgerald v. Dist. Court (1985), 217 Mont. 106, 114, 703 P.2d 148; and to resolve procedural entanglements, State ex rel. Leavitt v. Dist. Court (1977), 172 Mont. 12, 560 P.2d 517; and Fitzgerald, 217 Mont. at 114.

Water rights on the West Gallatin River were adjudicated in Cause No. 3850, W.D. Bell v. F.K. Armstrong, in the then Ninth Judicial District of the State of Montana in and for the County of Gallatin by decree effective October 7, 1909. The water rights of the petitioner were adjudicated therein as well as rights of other users on the West Gallatin River. Water commissioners have been appointed by the Gallatin County District Court to administer such decree. In July 1990, a number of water users on the river submitted a petition for appointment of a water commissioner for the enforcement of the above described decree. The petition was filed in said Cause No. 3850, in accordance of Chapter 5, Title 81 of the Montana Code Annotated 1989. This was done in July 1990, and on July 6, 1990, Judge Thomas A. Olson issued an order for temporary appointment of a water commissioner. In that order the court stated as follows:

> The court being advised that the West Gallatin River is dropping dramatically due to the on-set of hot weather, and recognizing that the water users will soon present a petition for the appointment of a water commissioner, and the court wishing to avoid a de-watering of the river as has happened in the past,
> NOW THEREFORE the court hereby appoints Les Aaberg as temporary water commissioner for the West Gallatin River effective immediately.

A formal order appointing the Water Commissioner was signed on the

2

same date. The Water Commissioner was appointed until further order of the court. In the formal order appointing the Water Commissioner it was stated as follows:

> IT IS ORDERED that Les Aaberg be and he is hereby appointed Water Commissioner, who shall have the authority to measure and distribute to the parties entitled thereto under such decree (referring to the W.A. Bell v. F.K. Armstrong decree) of the waters of West Gallatin, and to which they are entitled according to their priority as established by such decree for the season of 1990.

On July 17, 1990, the Water Commissioner so appointed closed the headgate of the petitioner, Baker Ditch Co. (Baker Ditch), which had decreed water rights, and the Water Commissioner refused to allow Baker Ditch to reopen its headgate. When asked why he had closed the headgate the Water Commissioner responded that he wished to enforce the water rights on the river in order of their priority.

Baker Ditch thereupon filed a dissatisfied water user's petition in Judge Olson's court on July 30, 1990. This petition was filed under §§ 85-2-406 and 85-5-301, MCA(1989). The petitioner in general alleges that Baker Ditch is the owner of a decreed water right under the decree in Cause No. 3850 above referred to, and that essentially it had not received that water right and that the Water Commissioner had informed Baker Ditch it would receive no further water until claims upstream appropriated with senior priority dates had been satisfied. The petition further alleged that Baker Ditch could divert water without injury to such upstream seniors. The petition further alleged that the headgate was located almost at the end of the West Gallatin River;

3

that there was sufficient water to supply Baker Ditch; that such water would come from recharging by return flows, seepage and otherwise, into the river, even though there might be no water available for an upstream superior appropriator to Baker Ditch; and that such appropriation by Baker Ditch did not in any way interfere with any senior upstream water right holders. It alleged that the Water Commissioner's rigid adherence to the priority system established, is contrary to the basic principles of water administration, and contrasted dramatically with the administration of the water rights on said river over the past 30 years. The petition also alleged that the water can be diverted by the petitioner without any injury to any downstream senior appropriators, and that the Gallatin River was flowing enough to satisfy these rights even after the appropriation made by Baker Ditch.

Judge Olson then recused himself and the matter was transferred to Judge Larry Moran who also sits in the Eighteenth Judicial District. A hearing was held on August 23 and evidence was presented by lay and expert witnesses. Evidence was presented that the Baker Ditch diversions would not injure upstream senior water users, and there was no evidence presented that diversion would harm any of the water users on the West Gallatin River. The Water Commissioner testified that the diversion by Baker Ditch would have no adverse effect on upstream senior appropriators.

Judge Moran thereafter declined to issue a ruling which would conflict with Judge Olson's previous instructions in the temporary appointment of a water commissioner. Judge Moran did not feel he

4

could essentially reverse Judge Olson's instructions and orders to the Water Commissioner of the West Gallatin River relative to the "dewatering" of the river. Judge Moran then stated that he was not prepared to conclude that the only beneficial use of water results from diversion, and that would appear to be one of the main issues inherent in the position of the petitioner. Judge Moran further stated that what essentially is asked for here, is to take 2/3 of the remaining water in the Gallatin River, leaving only 1000 miner inches available for the river itself. For all practical purposes the court would consider this a dewatering of the West Gallatin River. If the court were to grant the petition recognizing the continuing pattern of re-diverting recharged water, then Judge Moran feels that perhaps would be using water which really only belongs to the river itself, and to a specific appropriator regardless of the appropriator's priority.

After additional remarks Judge Moran refused to assume jurisdiction and remanded the matter back to Judge Olson. Judge Olson then called in Judge Frank Davis, Judge of the Fifth Judicial District. On April 18, 1991 Judge Davis issued an order which discharged the Water Commissioner's original attorney Matt Williams. It appeared that Mr. Williams was relieved of his duties because he had presented proposed findings of fact and conclusions of law which basically granted Baker Ditch the relief requested. Judge Davis recited in his order that Mr. Williams' position was that his proposal conformed to the decree. Judge Davis stated that what is clear is that Williams did not fulfill his duty to advocate the court's position. Judge Davis authorized Mr. Aaberg to employ

5

other counsel of his choice to represent the court. The court then further ordered that if and when other counsel is obtained that counsel should consult with counsel for Baker Ditch and agree, if possible, as to what further evidence is deemed necessary or otherwise formulate an agreement that the matter may be submitted on transcripts and briefs. Should the court's new counsel conclude, as did the Water Commissioner's original counsel, that the petition has merit, then the two counsels should simply submit joint proposed findings, conclusions and order.

Thereafter on July 9, 1991, Judge Olson again temporarily appointed Les Aaberg as Water Commissioner for the West Gallatin River. The Water Commissioner then retained the services of Goetz, Madden and Dunn of Bozeman to represent him. Again on July 14, 1991, the Water Commissioner directed Baker Ditch to reduce its diversion to a minimal level. On such date there was approximately 7800 miner inches of flow in the river.

There has not been a decision on Baker Ditch's petition to receive its adjudicated right of water from the river. On July 16, 1991, the Montana Wildlife Federation filed a motion to intervene relative to this petition. It does not appear that the Montana Wildlife Federation has any interest in the decree of the water rights of the West Gallatin River issued in 1909.

This case began as an administration of the distribution of water of the West Gallatin River in accordance with the 1909 case of W.D. Bell v. F.K. Armstrong decree in Cause No. 3850. The statutes governing this process are for the purpose of expeditious administration and not for the purpose of adjudication. It is a

6

relatively simple matter to administer the various water rights and their priority. The users are entitled to what the decree gives them and no more. By statute, the water court is vested with exclusive jurisdiction relative to all matters relating to the determination of existing water rights within the boundaries of the State of Montana. See § 3-7-501, MCA (1989). See Mildenberger v. Galbraith (1991), 48 St.Rep. 621. District courts are granted the authority to supervise the distribution of water that has already been adjudicated and to enforce such water decrees. See § 85-2-406(3), MCA. The district court is bound by the existing water decree. In the water decree at issue there is no provision which provides that water rights may not be enforced in order to avoid a cessation of instream flow.

The law is clear the only matters for decision relative to the appointment of a water commissioner and petitions in relation to his duties, is whether or not the commissioner is distributing water to existing water right holders pursuant to the adjudication decree. See Quigley v. McIntosh (1940), 110 Mont. 495, 103 P.2d 1067. The only purpose of the petition of a dissatisfied water user is to enforce rights determined by the decree.

The Water Commissioner evidently believed that he had to enforce the decree to the extent that if a prior appropriator was without water upstream that a subsequent appropriator downstream could not divert such water under its water right because no water was available to an upstream prior appropriator, even though the river was being recharged. Such construction is groundless and irrational when dealing with the beneficial use of water. If a

7

subsequent appropriator is using water in accordance with the decree and such use cannot in any way be a detriment to a prior appropriator, then the subsequent appropriator has the right to the use of such water. See Custer v. Missoula Public Service Co. (1931), 91 Mont. 136, 6 P.2d 131; and Quigley v. McIntosh (1930), 88 Mont. 103, 290 P.2d 266. The decree is to be interpreted according to the water law of the State of Montana as provided by statutes and appropriate court decisions. The Montana Water Users Act provides that the determination and adjudication of water rights including new water rights, which include minimum instream flow water rights, if any, are vested in the jurisdiction of the Water Court. See § 3-7-501, MCA. Mildenberger, 48 St.Rep. at 621.

IT IS THEREFORE ORDERED that the District Court is to instruct the Water Commissioner to distribute the water of the West Gallatin River to the users in accordance with the decree of 1909 and this opinion. Nothing in this order shall restrict the Water Commissioner in requiring proper headgates, measuring devises and works, in accordance with the decree.

IT IS FURTHER ORDERED that the motion to intervene by the Montana Wildlife Federation in the underlying petition of dissatisfied water users should be denied.

DATED this 9th day of January, 1992.

Chief Justice

_____
William E. Hunt, Sr.

_____
Karla M. Gray

_____
J. C. McDonough

_____
                                Justices

Justice Terry N. Trieweiler would deny the petition for writ of supervisory control and grant the petition for rehearing.

9

January 9, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

W. Russell McElyea
Moore, O'Connell, Refling & Manos
P.O. Box 1288
Bozeman, MT 59771-1288

Matt Williams
Attorney at Law
506 E. Babcock
Bozeman, MT 59715

Les Aaberg
Water Commissioner
1145 So. Pinecrest
Bozeman, MT 59715

H. A. Bolinger, Esq.
P.O. Box 1047
Bozeman, MT 59715

James H. Goetz
Attorney at Law
35 No. Grand
Bozeman, MT 59715

Thomas France
Attorney at Law
240 N. Higgins
Missoula, MT 59802

Hon. Thomas A. Olson
District Judge
615 S. 16th St.

Bozeman, MT   59715


Hon. Frank M. Davis
District Judge
2 S. Pacific, CL #6
Dillon, MT   59725

Richard L. Krause, Asst. Counsel
American Farm Bureau Federation
225 Touhy Ave.
Park Ridge, IL   60068

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 91-386

BAKER DITCH COMPANY,

Petitioner,

-v-

THE DISTRICT COURT OF THE EIGHTEENTH
JUDICIAL DISTRICT OF THE STATE OF
MONTANA, IN AND FOR THE COUNTY OF
GALLATIN, THE HONORABLE THOMAS A.
OLSON, and THE HONORABLE FRANK M.
DAVIS, Presiding Judges,

Respondents.

) O P I N I O N
) AND
) O R D E R



FILED

NOV -7 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

This is an original proceeding on application for writ of supervisory control. The petitioner has asked this Court to exercise its supervisory control and to direct the District Court of the Eighteenth Judicial District and its Water Commissioner to distribute the waters of the West Gallatin River in accordance with the laws of the State of Montana and more particularly in accordance with Cause No. 3850, W.D. Bell v. F.K. Armstrong of the Ninth Judicial District in and for the County of Gallatin, which adjudicated the water rights of the petitioner and other water rights in the West Gallatin River.

This Court accepts supervisory control in order to promote judicial economy and eliminate needless litigation, State ex rel. First Bank v. Dist. Court (1989), 240 Mont. 77, 782 P.2d 1260; State ex rel. Fitzgerald v. Dist. Court (1985), 217 Mont. 106, 114, 703 P.2d 148; and to resolve procedural entanglements, State ex rel. Leavitt v. Dist. Court (1977), 172 Mont. 12, 560 P.2d 517; and

1

<u>Fitzgerald</u>, 217 Mont. at 114.

Water rights on the West Gallatin River were adjudicated in Cause No. 3850, W.D. Bell v. F.K. Armstrong, in the then Ninth Judicial District of the State of Montana in and for the County of Gallatin by decree effective October 7, 1909. The water rights of the petitioner were adjudicated therein as well as rights of other users on the West Gallatin River. Water commissioners have been appointed by the Gallatin County District Court to administer such decree. In July 1990, a number of water users on the river submitted a petition for appointment of a water commissioner for the enforcement of the above described decree. The petition was filed in said Cause No. 3850, in accordance of Chapter 5, Title 81 of the Montana Code Annotated 1989. This was done in July 1990, and on July 6, 1990, Judge Thomas A. Olson issued an order for temporary appointment of a water commissioner. In that order the court stated as follows:

> The court being advised that the West Gallatin River is dropping dramatically due to the on-set of hot weather, and recognizing that the water users will soon present a petition for the appointment of a water commissioner, and the court wishing to avoid a de-watering of the river as has happened in the past,
> NOW THEREFORE the court hereby appoints Les Aaberg as temporary water commissioner for the West Gallatin River effective immediately.

A formal order appointing the Water Commissioner was signed on the same date. The Water Commissioner was appointed until further order of the court. In the formal order appointing the Water Commissioner it was stated as follows:

> IT IS ORDERED that Les Aaberg be and he is hereby appointed Water Commissioner, who shall have the authority to measure and distribute to the parties

2

entitled thereto under such decree (referring to the W.A. Bell v. F.K. Armstrong decree) of the waters of West Gallatin, and to which they are entitled according to their priority as established by such decree for the season of 1990.

On July 17, 1990, the Water Commissioner so appointed closed the headgate of the petitioner, Baker Ditch Co. (Baker Ditch), which had decreed water rights, and the Water Commissioner refused to allow Baker Ditch to reopen its headgate. When asked why he had closed the headgate the Water Commissioner responded that he wished to enforce the water rights on the river in order of their priority.

Baker Ditch thereupon filed a dissatisfied water user's petition in Judge Olson's court on July 30, 1990. This petition was filed under §§ 85-2-406 and 85-5-301, MCA(1989). The petitioner in general alleges that Baker Ditch is the owner of a decreed water right under the decree in Cause No. 3850 above referred to, and that essentially it had not received that water right and that the Water Commissioner had informed Baker Ditch it would receive no further water until claims upstream appropriated with senior priority dates had been satisfied. The petition further alleged that Baker Ditch could divert water without injury to such upstream seniors. The petition further alleged that the headgate was located almost at the end of the West Gallatin River; that there was sufficient water to supply Baker Ditch; that such water would come from recharging by return flows, seepage and otherwise, into the river, even though there might be no water available for an upstream superior appropriator to Baker Ditch; and that such appropriation by Baker Ditch did not in any way interfere

3

with any senior upstream water right holders. It alleged that the Water Commissioner's rigid adherence to the priority system established, is contrary to the basic principles of water administration, and contrasted dramatically with the administration of the water rights on said river over the past 30 years. The petition also alleged that the water can be diverted by the petitioner without any injury to any downstream senior appropriators, and that the Gallatin River was flowing enough to satisfy these rights even after the appropriation made by Baker Ditch.

Judge Olson then recused himself and the matter was transferred to Judge Larry Moran who also sits in the Eighteenth Judicial District. A hearing was held on August 23 and evidence was presented by lay and expert witnesses. Evidence was presented that the Baker Ditch diversions would not injure upstream senior water users, and there was no evidence presented that diversion would harm any of the water users on the West Gallatin River. The Water Commissioner testified that the diversion by Baker Ditch would have no adverse effect on upstream senior appropriators.

Judge Moran thereafter declined to issue a ruling which would conflict with Judge Olson's previous instructions in the temporary appointment of a water commissioner. Judge Moran did not feel he could essentially reverse Judge Olson's instructions and orders to the Water Commissioner of the West Gallatin River relative to the "dewatering" of the river. Judge Moran then stated that he was not prepared to conclude that the only beneficial use of water results from diversion, and that would appear to be one of the main issues

4

inherent in the position of the petitioner. Judge Moran further stated that what essentially is asked for here, is to take 2/3 of the remaining water in the Gallatin River, leaving only 1000 miner inches available for the river itself. For all practical purposes the court would consider this a dewatering of the West Gallatin River. If the court were to grant the petition recognizing the continuing pattern of re-diverting recharged water, then Judge Moran feels that perhaps would be using water which really only belongs to the river itself, and to a specific appropriator regardless of the appropriator's priority.

After additional remarks Judge Moran refused to assume jurisdiction and remanded the matter back to Judge Olson. Judge Olson then called in Judge Frank Davis, Judge of the Fifth Judicial District. On April 18, 1991 Judge Davis issued an order which discharged the Water Commissioner's original attorney Matt Williams. It appeared that Mr. Williams was relieved of his duties because he had presented proposed findings of fact and conclusions of law which basically granted Baker Ditch the relief requested. Judge Davis recited in his order that Mr. Williams' position was that his proposal conformed to the decree. Judge Davis stated that what is clear is that Williams did not fulfill his duty to advocate the court's position. Judge Davis authorized Mr. Aaberg to employ other counsel of his choice to represent the court. The court then further ordered that if and when other counsel is obtained that counsel should consult with counsel for Baker Ditch and agree, if possible, as to what further evidence is deemed necessary or otherwise formulate an agreement that the matter may be submitted

5

on transcripts and briefs. Should the court's new counsel conclude, as did the Water Commissioner's original counsel, that the petition has merit, then the two counsel should simply submit joint proposed findings, conclusions and order.

Thereafter on July 9, 1991, Judge Olson again temporarily appointed Les Aaberg as Water Commissioner for the West Gallatin River. The Water Commissioner then retained the services of Goetz, Madden and Dunn of Bozeman to represent him. Again on July 14, 1991, the Water Commissioner directed Baker Ditch to reduce its diversion to a minimal level. On such date there was approximately 7800 miner inches of flow in the river.

There has not been a decision on Baker Ditch's petition to receive its adjudicated right of water from the river. On July 16, 1991, the Montana Wildlife Federation filed a motion to intervene relative to this petition. It does not appear that the Montana Wildlife Federation has any interest in the decree of the water rights of the West Gallatin River issued in 1909.

This case began as an administration of the distribution of water of the West Gallatin River in accordance with the 1909 case of W.D. Bell v. F.K. Armstrong decree in Cause No. 3850. The statutes governing this process are for the purpose of expeditious administration and not for the purpose of adjudication. It is a relatively simple matter to administer the various water rights and their priority. The users are entitled to what the decree gives them and no more. By statute, the water court is vested with exclusive jurisdiction relative to all matters relating to the determination of existing water rights within the boundaries of the

6

State of Montana. See § 3-7-501, MCA (1989). See Mildenberger v. Galbraith (1991), 48 St.Rep. 926. District courts are granted the authority to supervise the distribution of water that has already been adjudicated and to enforce such water decrees. See § 85-2-406(3), MCA. The district court is bound by the existing water decree. In the water decree at issue there is no provision which provides that water rights may not be enforced in order to avoid a cessation of instream flow.

The law is clear the only matters for decision relative to the appointment of a water commissioner and petitions in relation to his duties, is whether or not the commissioner is distributing water to existing water right holders pursuant to the adjudication decree. See Quigley v. McIntosh (1940), 110 Mont. 495, 103 P.2d 1067. The only purpose of the petition of a dissatisfied water user is to enforce rights determined by the decree.

The Water Commissioner evidently believed that he had to enforce the decree to the extent that if a prior appropriator was without water upstream that a subsequent appropriator downstream could not divert such water under its water right because no water was available to an upstream prior appropriator, even though the river was being recharged. Such construction is groundless and irrational when dealing with the beneficial use of water. If a junior appropriator downstream is using water and such use cannot in any way be a detriment to the upstream prior appropriator, then the downstream owner has the right to the use of such water. See Custer v. Missoula Public Service Co. (1931), 91 Mont. 136, 6 P.2d 131; and Quigley v. McIntosh (1930), 88 Mont. 103, 290 P.2d 266.

7

The decree is to be interpreted according to the water law of the State of Montana as provided by statutes and appropriate court decisions.

IT IS THEREFORE ORDERED that the District Court is to instruct the Water Commissioner to distribute the water of the West Gallatin River to the users in accordance with the decree of 1909 and this opinion. Nothing in this order shall restrict the Water Commissioner in requiring proper headgates, measuring devises and works, in accordance with the decree.

IT IS FURTHER ORDERED that the motion to intervene by the Montana Wildlife Federation in the underlying petition of dissatisfied water users is denied.

DATED this __7th__ day of November, 1991.

_____
Chief Justice

_____
_____
_____
_____
_____
Justices

Justice Terry N. Trieweiler would deny the application for writ of supervisory control.

8

November 7, 1991

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


W. Russell McElyea
Moore, O'Connell, Refling & Manos
P.O. Box 1288
Bozeman, MT 59771-1288

Matt Williams
Attorney at Law
506 E. Babcock
Bozeman, MT 59715

Les Aaberg
Water Commissioner
1145 So. Pinecrest
Bozeman, MT 59715

H. A. Bolinger, Esq.
P.O. Box 1047
Bozeman, MT 59715


James H. Goetz
Attorney at Law
35 No. Grand
Bozeman, MT 59715

Thomas France
Attorney at Law
240 N. Higgins
Missoula, MT 59802

Hon. Thomas A. Olson
District Judge
615 S. 16th St.

Bozeman, MT   59715


Hon. Frank M. Davis
District Judge
2 S. Pacific, CL #6
Dillon, MT   59725

Richard L. Krause, Asst. Counsel
American Farm Bureau Federation
225 Touhy Ave.
Park Ridge, IL   60068

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy