No. 96-512

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

CHARLES S. ("Chuck") BRAGG, Jr., and
PATRICIA S. BRAGG, husband and wife,

Plaintiffs and Respondents,

v.

WILLIAM D. McLAUGHLIN and
SONJA INDRELAND MCLAUGHLIN,
husband and wife,

Defendants and Appellants.

FILED

AUG 28 1997

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Sixth Judicial District,
               In and for the County of Park,
               The Honorable John R. Christensen, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        William D. McLaughlin, Sonja Indreland McLaughlin, Wilsall, Montana,
        pro se

    For Respondent:

        Jeffrey N. Pence, Huppert & Swindlehurst, Livingston, Montana

Submitted on Briefs: February 27, 1997

Decided:  August 28,  1997

Filed:

_____
                    Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

William and Sonja McLaughlin (the McLaughlins) appeal a judgment of the District Court for the Sixth Judicial District, Park County, granting quiet title over an easement across the McLaughlins' property to Charles and Patricia Bragg (the Braggs) and permanently enjoining the McLaughlins from interfering with the easement. The court also awarded the Braggs compensatory and punitive damages. The McLaughlins appeal. We affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

We address the following issues on appeal:

1. Whether the District Court erred in exercising jurisdiction over this cause of action.

2. Whether the District Court erred in determining that a certain provision of the McLaughlins' deed to real property creates an access easement across the McLaughlins' property for the benefit of real property owned by the Braggs and in quieting title to that easement.

3. Whether the District Court erred in determining that a certain boundary fence constructed by the Braggs is on the true boundary line between the Braggs' and the McLaughlins' real property and in quieting title thereto.

4. Whether the District Court erred in issuing a permanent injunction enjoining the McLaughlins from interfering with the Braggs' access easement.

5. Whether the District Court erred in determining that the McLaughlins slandered the Braggs' title to their real property.

6. Whether the District Court erred in determining that the McLaughlins interfered with the Braggs' listing contract.

7. Whether the District Court erred in awarding compensatory and punitive damages to the Braggs.

## Factual and Procedural Background

The Braggs and the McLaughlins own adjoining parcels of real property situated in Park County. They purchased the parcels from a common grantor, Stan and Charlottte Clark (the Clarks). The McLaughlins' deed provides that a roadway easement exists across their property providing access to the Braggs' property. Without this easement, the Braggs have no other legal or insurable access to their property.

The Clarks purchased the parcels in question along with several other parcels in 1974. In 1988, the Clarks subdivided one of the parcels into three tracts lying side by side which we will refer to as Tracts A, B and C. In July 1992, the Clarks further subdivided Tract C into two tracts which we will refer to as Tracts C-1 and C-2. Tract C-2 consists of the northernmost 40 acres of Tract C.

In 1992, the Clarks and the McLaughlins entered into negotiations for the purchase of Tracts A, B and C-1. The Clarks had previously agreed to sell Tract C-2 to the Braggs. Stan Clark testified that during negotiations with the McLaughlins, he advised them of the need to provide the Braggs with access to Tract C-2 over the property the McLaughlins intended to purchase.

The Clarks conveyed Tracts A, B and C-1 to the McLaughlins by Warranty Deed dated August 10, 1992, and recorded on August 20, 1992. The Clarks conveyed Tract C-2 to the Braggs by Warranty Deed dated October 9, 1992, and recorded on October 13, 1992. The deed to the McLaughlins contained the following language:

> SPECIAL PROVISION for the benefit of Tract C-2, Certificate of Survey 1151, Park County, Montana, as follows:
>
> "Grantees agree to provide an access (roadway) easement for the benefit of the property being acquired by Chuck Bragg, his heirs and assigns, over the most direct route, reasonable and possible for access purposes, which easement shall not be more than fifteen (15) feet in width. Grantees may, at their option, designate Bragg's said easement to coincide with the roadway to be constructed by the Grantees, when such roadway is completed."

Sonja McLaughlin, who is a licensed attorney in the State of Washington, testified that she drew up this provision.

Neither party's property adjoins a county road, thus both parties must cross adjoining property to reach the county road. The adjoining property had been owned by the Clarks at one time and they reserved a 60-foot-wide access easement across this property to reach the Braggs' and the McLaughlins' properties.

4

In April 1994, the Braggs decided to sell Tract C-2 and purchase property in Meagher County. They listed Tract C-2 with a real estate agent in Livingston. When the real estate agent went to inspect the property and take photographs for use in the sale, she was approached by the McLaughlins who informed her that no easement existed across the McLaughlins' property and that it would cost the Braggs $40,000 to obtain an easement. The McLaughlins later informed the Braggs that they had no legal access to Tract C-2 over the McLaughlins' property.

In June 1994, the McLaughlins filed a notice in the office of the Park County Clerk and Recorder stating that the Braggs "have no right of any kind, legal or prescriptive, to pass over [the McLaughlins'] property." The notice also alleged that a fence constructed by the Braggs between Tracts C-1 and C-2 did not lie on the true boundary line between the two tracts. A copy of this notice was mailed to the Braggs. The McLaughlins erected "No Trespassing" signs on the property, placed locks on the access road gates and blocked the road with abandoned vehicles. Because of these actions by the McLaughlins, the Braggs' real estate agent refused to show the property.

On June 29, 1994, the Braggs filed a complaint against the McLaughlins alleging interference with the Braggs' access easement, slander of title, and interference with contract. They asked the court to quiet title to the easement to them along with the boundary line between Tracts C-1 and C-2 as previously established by the survey. The Braggs also

5

requested a preliminary injunction preventing the McLaughlins from interfering with the Braggs' easement during the pendency of this action.

Hearings were conducted on August 9, 1994, and September 9, 1994, after which the District Court issued the preliminary injunction requested by the Braggs. The McLaughlins appealed the issuance of the preliminary injunction and this Court affirmed the District Court on September 7, 1995.

Following a bench trial conducted on April 24, 1996, and May 23, 1996, the District Court filed its Findings of Fact and Conclusions of Law and its Judgment and Injunction Order on May 31, 1996. The court held that the Braggs have an access easement over the McLaughlins' property and that the easement is appurtenant to the land. The court quieted title to the easement in favor of the Braggs and permanently enjoined the McLaughlins from interfering with the easement. The court also held that the McLaughlins slandered the Braggs' title to their property, interfered with the Braggs' listing contract with their real estate agent, and that the fence constructed by the Braggs was properly on the true boundary line between the McLaughlins' tract of land and the Braggs' tract of land. The court awarded the Braggs compensatory and punitive damages. The McLaughlins appeal the District Court's judgment.

## Standard of Review

The standard of review of a district court's findings of fact is whether the court's findings are clearly erroneous. Daines v. Knight (1995), 269 Mont. 320, 324, 888 P.2d 904,

906 (citing Columbia Grain Intern. v. Cereck (1993), 258 Mont. 414, 417, 852 P.2d 676, 678). The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. Carbon County v. Union Reserve Coal Co., Inc. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686 (citing Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603).

## Issue 1.

### Whether the District Court erred in exercising jurisdiction over this cause of action.

The McLaughlins raised the issue of subject matter jurisdiction several times throughout the proceedings in District Court. Each time the court determined that it had subject matter jurisdiction over this cause of action and denied the McLaughlins' motions to dismiss on that basis. On appeal, the McLaughlins again contend that the District Court lacked subject matter jurisdiction and that the Braggs lacked standing to bring this cause of action.

In their complaint, the Braggs asked the court to quiet title to them the border between Tracts C-1 and C-2 as previously established by survey and the right to access Tract C-2 across McLaughlins' property. An easement is a nonpossessory interest in real property. Kuhlman v. Rivera (1985), 216 Mont. 353, 358, 701 P.2d 982, 985. Section 70-28-101, MCA, provides:

> **Quiet title action authorized.** An action may be brought and prosecuted to final decree, judgment, or order by any person or persons, whether in actual possession or not, claiming title to real estate against any

7

person or persons, both known and unknown, who claim or may claim any right, title, estate, or interest therein or lien or encumbrance thereon adverse to plaintiff's ownership or any cloud upon plaintiff's title thereto, whether such claim or possible claim be present or contingent, including any claim or possible claim of dower, inchoate or accrued, for the purpose of determining such claim or possible claim and quieting the title to said real estate.

In addition, Section 70-28-103, MCA, requires that quiet title actions be brought in the county where the real property is situated. Consequently, contrary to the McLaughlins' repeated assertions, the Braggs' cause of action to quiet title to the easement and to the boundary line is an appropriate action to grant subject matter jurisdiction to a district court. And, because the property at issue is located in Park County, the District Court for the Sixth Judicial District had jurisdiction to hear this case.

As to the issue of standing, § 70-17-109, MCA, provides:

> **Who may bring action to enforce easement.** The owner of any estate in a dominant tenement or the occupant of such tenement may maintain an action for the enforcement of an easement attached thereto.

Therefore, the Braggs, as owners of the dominant tenement in this case, have standing to bring an action to enforce their easement.

Accordingly, we hold that the District Court did have subject matter jurisdiction over this cause of action.

## Issue 2.

**Whether the District Court erred in determining that a certain provision of the McLaughlins' deed to real property creates an access easement across the McLaughlins' property for the benefit of real property owned by the Braggs and in quieting title to that easement.**

8

The District Court concluded that the "special provision" in the Clark to McLaughlin deed reserves an easement for ingress and egress across McLaughlins' property (Tracts A, B and C-1) for the benefit of Tract C-2. The court quieted title to the easement across McLaughlins' property in favor of Tract C-2, determining that the easement is appurtenant to Tract C-2 and runs with the land.

The McLaughlins contend that this "special provision" in the deed is merely a promise to provide some type of access in the future, that because this provision is at the end of the deed it must be construed separately from the rest of the deed, and that the District Court erred in allowing Clark, the grantor, and others to testify regarding the intent of the special provision. The "special provision" in the Clark to McLaughlin deed provides:

> SPECIAL PROVISION for the benefit of Tract C-2, Certificate of Survey 1151, Park County, Montana, as follows:

> "Grantees agree to provide an access (roadway) easement for the benefit of the property being acquired by Chuck Bragg, his heirs and assigns, over the most direct route, reasonable and possible for access purposes, which easement shall not be more than fifteen (15) feet in width. Grantees may, at their option, designate Bragg's said easement to coincide with the roadway to be constructed by the Grantees, when such roadway is completed."

Sonja McLaughlin testified that she drafted this "special provision" and that she intentionally placed this provision at the end of the deed so that it would be considered separate from the rest of the deed. It is a well established maxim of jurisprudence that if an uncertainty exists in a contract, the language of the contract should be interpreted against the party drafting it. See § 28-3-206, MCA. In addition, this Court has stated that the entire

instrument must be considered "without regard to the position of the several clauses." City of Missoula v. Mix (1950), 123 Mont. 365, 370, 214 P.2d 212, 215.

The McLaughlins contend that the District Court erred in allowing testimony regarding the intention of the parties in drafting the "special provision." We disagree. "For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument and of the parties to it, may also be shown so that the judge be placed in the position of those whose language he is to interpret." Section 1-4-102, MCA. "In the construction of an instrument, the intention of the parties is to be pursued if possible." Section 1-4-103, MCA. Moreover, § 70-20-202, MCA, provides in pertinent part:

> (1) When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives or successors in interest no evidence of the terms of the agreement other than the contents of the writing except in the following cases:
>
> (a) where a mistake or imperfection of the writing is put in issue by the pleadings . . . .
> (2) But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in 1-4-102, or to explain an extrinsic ambiguity or to establish illegality or fraud.

It was Clark's testimony that his intent in adding the "special provision" was to allow the Braggs access to Tract C-2 across Tracts A, B and C-1. He asserted that he repeatedly made that clear to the McLaughlins throughout their negotiations for the purchase of Tracts A, B and C-1. The real estate agent handling the property and Clark's attorney also testified

10

that Clark was adamant about providing access to Tract C-2 across Tracts A, B and C-1. Although the "special provision" does not use the term "reserve," it does state that McLaughlins agree to provide an easement for the benefit of Tract C-2.

Therefore, we agree with the District Court's conclusion that the "special provision" is an enforceable reservation and grant of an easement appurtenant to Tract C-2. Furthermore, we agree with the District Court's finding that the McLaughlins intended to convey the appearance of reserving, granting, or creating an easement for the benefit of Tract C-2 when in fact they intended all along to deny an easement across their property.

Accordingly, we hold that the District Court was correct in determining that the "special provision" in the McLaughlins' deed created an access easement across their property for the benefit of Tract C-2 and that the court was correct in quieting title to that easement in favor of Tract C-2.

## Issue 3.

**Whether the District Court erred in determining that a certain boundary fence constructed by the Braggs is on the true boundary line between the Braggs' and the McLaughlins' real property and in quieting title thereto.**

The District Court concluded that the fence installed by the Braggs between Tracts C-1 and C-2 is properly on the boundary line between those two tracts and the court quieted title accordingly. The McLaughlins contend that the fence is not on the true boundary line and that the District Court erred in quieting title to the fence line as an action to quiet title is not the proper action for a boundary dispute.

11

Chuck Bragg testified that he and Jerry Acker (Acker) established the boundary line between Tracts C-1 and C-2 by locating the four pins set by surveyor Warren Latvala representing the corners of Tract C-2. Bragg also testified that he and Acker then used a transit to determine the boundary line and the proper location for the fence. Braggs' testimony was corroborated by Acker. The McLaughlins offered no evidence to dispute the testimony that the fence followed the boundary line between the two tracts. Thus, the evidence supported the District Court's finding that the fence was constructed on the true boundary line between Tracts C-1 and C-2.

Accordingly, we hold that the District Court was correct in quieting title to the boundary line in favor of the Braggs.

### Issue 4.

**Whether the District Court erred in issuing a permanent injunction enjoining the McLaughlins from interfering with the Braggs' access easement.**

In its Judgment and Injunction Order, filed May 31, 1996, the District Court "permanently and forever" enjoined McLaughlins and their heirs, successors, assigns and agents from obstructing or interfering with the use and enjoyment of the easement by the Braggs and their heirs, successors, assigns or agents. McLaughlins contend on appeal that the injunction is not supported by the District Court's Findings of Fact and Conclusions of Law or by the provisions in the Montana Code Annotated regarding injunctions. We disagree.

12

Section 27-19-102, MCA, provides:

**When final injunction may be granted to prevent breach of obligation.** Except where otherwise provided by the provisions of the code governing specific and preventive relief . . . , a final injunction may be granted to prevent the breach of an obligation existing in favor of the applicant where:

. . .

(3) the restraint is necessary to prevent a multiplicity of judicial proceedings . . . .

There was sufficient evidence in this case for the District Court to find that restraint was necessary in order to avoid further judicial proceedings. In its findings of fact, the District Court pointed to the following evidence to support its conclusion that the McLaughlins had interfered with the easement: the McLaughlins locked the gates across the access road without providing keys to the Braggs; blocked the road with vehicles; filed the "Legal Notice" stating that the Braggs had no right to pass over the McLaughlins' property; and informed the real estate agents that the Braggs had no legal right of access across the McLaughlins' property.

We have previously stated that the issuance or refusal of an injunction is addressed to the discretion of the trial court. Butler v. Germann (1991), 251 Mont. 107, 114, 822 P.2d 1067, 1072 (citing Frame v. Frame (1987), 227 Mont. 439, 444, 740 P.2d 655, 659). We find no abuse of discretion here. Moreover, a review of the record in this case reveals that even after the District Court issued the injunction, the McLaughlins continued to hinder the Braggs' access to Tract C-2 by cutting a trench across the access road causing the Braggs to file with the District Court a Motion for Order to Show Cause for Contempt.

13

Therefore, we hold that the District Court was correct in issuing a permanent injunction enjoining the McLaughlins from interfering with the Braggs' access easement.

## Issue 5.

**Whether the District Court erred in determining that the McLaughlins slandered the Braggs' title to their real property.**

The District Court concluded that the McLaughlins slandered the Braggs' title to their property by placing the "Legal Notice" in the public records. Slander of title has been defined as "maliciously publish[ing] false matter which brings in question or disparages the title to property, thereby causing special damage to the owner." Felska v. Goulding (1989), 238 Mont. 224, 232, 776 P.2d 530, 535 (quoting First Security Bank of Bozeman v. Tholkes (1976), 169 Mont. 422, 427, 547 P.2d 1328, 1331).

The "Legal Notice" placed into the public records by the McLaughlins called into question the legal access to Tract C-2 and the location of the boundary fence between Tracts C-1 and C-2. Additionally, McLaughlins' denial of the existence of the easement was done maliciously and with a reckless disregard for the truth. A title examiner for Security Title testified that prior to the filing of the "Legal Notice," his company would have insured access to Tract C-2 over the easement created by the "special provision" in the Clark to McLaughlin deed and that without an insurable access to Tract C-2, the property was rendered unmarketable.

Accordingly, we hold that the District Court was correct in concluding that the McLaughlins slandered the Braggs' title to their real property.

14

## Issue 6.

**Whether the District Court erred in determining that the McLaughlins interfered with the Braggs' listing contract.**

The District Court concluded that the McLaughlins intentionally interfered with the Braggs' listing contract for the sale of their property. An action for interference with contractual or business relations requires: (1) intentional and willful acts; (2) calculated to cause damage to the plaintiff in his or her business; (3) done with the unlawful purpose of causing damage or loss, without justifiable cause on the part of the actor; and (4) actual damage or loss. Daniels v. Dean (1992), 253 Mont. 465, 474, 833 P.2d 1078, 1084.

The McLaughlins told the Braggs' real estate agents that the Braggs did not have legal access across the McLaughlins' property. One of the real estate agents testified that because of the McLaughlins' actions and threats, the real estate agency was unable to perform under the listing contract. Thus, the Braggs were unable to sell their property and they lost the opportunity to purchase other property at a favorable price.

The McLaughlins' intentional and willful acts of informing the real estate agents that no access existed when an access did in fact exist and of threatening to prosecute anyone crossing McLaughlins' property damaged the Braggs. Accordingly, we hold that the District Court was correct in determining that the McLaughlins interfered with the Braggs' listing contract.

## Issue 7.

**Whether the District Court erred in awarding compensatory and punitive damages to the Braggs.**

The District Court found that the McLaughlins' position and arguments were "frivolous and utterly without merit" and awarded the Braggs compensatory damages for their reasonable attorney fees and litigation costs in the amount of $27,214.27, along with future compensatory damages for all reasonable attorney fees and costs associated with defending the District Court's judgment on appeal . The longstanding rule in Montana is that absent statutory or contractual authority, attorney fees will not be awarded. Tanner v. Dream Island, Inc. (1996), 275 Mont. 414, 429, 913 P.2d 641, 650 (citations omitted). In certain instances in which bad faith or malicious behavior are involved, an equitable award of attorney fees has been upheld. Tanner, 913 P.2d at 650. However, this equitable consideration is invoked infrequently and only where the prevailing party has been required to defend against an action, not when the prevailing party instituted the action. Tanner, 913 P.2d at 651; Goodover v. Lindey's Inc. (1992), 255 Mont. 430, 447, 843 P.2d 765, 775.

The case before us presents neither a statutory nor a contractual basis for awarding attorney fees. Nor does it fall within one of the narrow exceptions to the general rule regarding attorney fees. Therefore, we hold that the District Court erred in awarding attorney fees to the Braggs, and we reverse this award.

Along with the award of attorney fees, the District Court awarded the Braggs punitive damages in the amount of $15,000. Punitive damages are allowed for acts of actual fraud or

16

actual malice. However, in awarding punitive damages the judge must comply with § 27-1-221(7)(b), MCA, which provides:

> When an award of punitive damages is made by the judge, he shall clearly state his reasons for making the award in findings of fact and conclusions of law, demonstrating consideration of each of the following matters:
> (i)  the nature and reprehensibility of the defendant's wrongdoing;
> (ii)  the extent of the defendant's wrongdoing;
> (iii)  the intent of the defendant in committing the wrong;
> (iv)  the profitability of the defendant's wrongdoing, if applicable;
> (v)  the amount of actual damages awarded by the jury;
> (vi)  the defendant's net worth;
> (vii)  previous awards of punitive or exemplary damages against the defendant based upon the same wrongful act;
> (viii)  potential or prior criminal sanctions against the defendant based upon the same wrongful act; and
> (ix)  any other circumstances that may operate to increase or reduce, without wholly defeating, punitive damages.

In its Findings of Fact and Conclusions of Law, the District Court failed to demonstrate its consideration of each of the elements of § 27-1-221(7)(b), MCA.

Accordingly, we hold that the District Court erred in awarding punitive damages to the Braggs without complying with the statute and we remand to the District Court for reconsideration of punitive damages in light of the requirements of § 27-1-221(7)(b), MCA.

Affirmed in part, reversed in part and remanded to the District Court for further proceedings consistent with this opinion.

Justice

17

We Concur:

_____

_____

_____

_____
Justices

18